**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SISSETON WAHPETON OYATE
OF THE LAKE TRAVERSE RESERVATION
P.O. Box 509
100 Veterans Memorial Drive
Agency Village, SD 57262;

QUINAULT INDIAN NATION
P.O. Box 189
136 Cuitan St.
Taholah, WA 98587;

WHITE EARTH NATION
P.O. Box 418
Highway 224
White Earth, MN 56591;

KICKAPOO TRIBE OF OKLAHOMA
P.O. Box 70
407 North Highway 102
McLoud, OK 74851,

Plaintiffs,

v.

SALLY JEWELL
SECRETARY OF THE INTERIOR
United States Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240; and

JACOB J. LEW
SECRETARY OF THE TREASURY
United States Department of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220,

Defendants.

Case No. 1:13-cv-601

**COMPLAINT**

## **Introduction and Nature of the Action**

1. This is an action seeking declaratory and injunctive relief and for judicial review of final administrative agency action regarding accountings of accounts, including funds and assets, of American Indian tribes that were or are held in trust by the federal government as trustee for the tribes as beneficiaries. This action arises out of Defendants' continuing breaches of inherent and statutory fiduciary accounting and management duties owed to Plaintiffs, including, but not limited to: the duty to provide complete and accurate accountings of Plaintiffs' trust funds and assets and the duty to correct trust fund and asset accounts improperly accounted for and / or improperly managed and make those accounts whole.

2. The federal government has held funds and / or assets in trust accounts for tribes since at least 1820. *See* U.S. Dep't of the Interior, Off. of the Inspector Gen., Statement of Assets and Trust Fund Balances at September 30, 1995, of the Trust Funds Managed by the Office of Trust Funds Management, Bureau of Indian Affairs, Audit Rep. No. 97-I-196 at 1 (Dec. 1996).

3. The federal government presently purports to hold over $3.4 billion in about 3,000 trust accounts for over 250 tribes. *See* U.S. Dep't of the Interior, Annual Report, Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians at 6 (2012); U.S. Dep't of the Interior, Off. of the Secretary, Off. of the Special Tr. for Am. Indians, News Release, President's FY 2013 Budget for the Office of the Special Trustee for American Indians Requests $146 Million (Feb. 13, 2012).

4. The government also states that it holds for tribes an additional unspecified number of "Other Trust Funds" that it values presently at over $300 million. U.S. Dep't of the Interior,

Annual Report, Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians at 6 (2012)

5. As the trustee for tribal trust accounts including funds and assets, Defendants have an inherent fiduciary duty to provide complete and accurate accountings of the funds and assets to the beneficiaries. "The obligation of a trustee to provide an accounting is a fundamental principle governing the subject of trust administration." *White Mountain Apache Tribe v. United States*, 26 Cl. Ct. 446, 448 (Cl. Ct. 1992), *aff'd,* 5 F.3d 1506 (Fed. Cir. 1993), *cert. denied,* 511 U.S. 1030 (1994), *citing* T. Bogert, Trusts § 141, at 494 (6th ed. 1987).

6. In addition, Congress has codified and reaffirmed the government's preexisting inherent fiduciary duty to provide complete and accurate accountings of tribal trust accounts. *See Cobell v. Norton,* 240 F.3d 1081, 1102 (D.C.Cir. 2001). Since 1987, Congress has urged that tribal trust accounts be audited and reconciled, and that tribal beneficiaries be provided with accountings. *See* Pub. L. No. 100-202, 101 Stat. 1329 (1987). This admonition was repeated as provisos in the U.S. Department of the Interior's appropriations bills for seven successive fiscal years, 1988 to 1994. In 1994 Congress enacted the American Indian Trust Management Reform Act, 25 U.S.C. §§ 4001 - 4061. This Act requires the federal government to provide tribal trust account beneficiaries with "full and complete accountings." 25 U.S.C. § 4044.

7. Defendants never have complied with these inherent fiduciary and statutory directives. In the 1990s the Bureau of Indian Affairs (BIA) within the Interior Department contracted with the accounting firm of Arthur Andersen & Co. (AA) to examine – pursuant to "agreed-upon procedures" – transactions in limited and selected tribal trust accounts for the limited and selected

time period of July 1972 through September 1992. In 1996 the BIA provided many tribes with AA Reports of their limited and selected accounts for this limited and selected time period. *See* Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996). The BIA subsequently admitted that the AA Reports were not complete and accurate accountings. *See* BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ("Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds.").

8. This admission has been echoed by other federal agencies, a congressional Task Force, and individual members of Congress. *See* U.S. Dep't of the Interior, Off. of the Special Tr. for Am. Indians, Strategic Plan to Implement the Reforms required by the American Indian Trust Fund Management Reform Act of 1994 at Part 8, page 5 (Apr. 1997) (the AA Basic Reconciliation effort "disclosed the types of problems which prevent a full accounting" of tribal trust accounts); U.S. Gen. Acct. Off., Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996) (the AA Reports do not reflect reliable, accurate, or complete accountings of tribal trust accounts because, *inter alia,* they were not conducted pursuant to generally accepted accounting principles, but instead were based on procedures defined by the BIA which imposed limitations on the scope of work to be done and made changes in methodologies over the course of the project; they were premised on the erroneous assumption that accountings could be done based on existing information from the BIA, without determining whether that information was accurate

historically; and, they were based on accounts for which records and information were non-existent or could not be located); Task Force on Indian Fund Management, H.R. Rep. 104-878 at 29 (1997) ("Billions of dollars of transactions conducted by Federal officials were found to be unreconcilable by Arthur Andersen LLP in a reconciliation study completed in 1995"); 148 Cong. Rec. H704-01 (Mar. 6, 2002) ("It was clear when these [AA] reports were sent to Indian tribes in 1996 that they were not a full and accurate reconciling of the tribal accounts") (statement of Rep. Hansen).

9. As recently as 2003 the General Accounting Office (GAO) stated that despite some improvements, Indian trust fund "account holders have no assurance that their account balances are accurate . . . ." U.S. Gen. Acct. Off., Report, Major Management Challenges and Program Risks, Department of the Interior, Performance and Accountability Series, GAO-03-104 (Jan. 2003).

10. Since, and notwithstanding, the AA project, the federal government has neither accounted completely and accurately for tribal trust accounts nor provided tribal account beneficiaries with complete and accurate trust accountings. From 1996 - 2012 the Office of the Special Trustee (OST) for American Indians' annual financial statement audits have been qualified because, *inter alia,* independent public accounting firms performing the audits have been "unable to satisfy themselves as to the fairness of the trust fund balances." Letter from Off. of Inspector Gen., U.S. Dep't of the Interior (Nov. 9, 2012), *reprinted in* U.S. Dep't of the Interior, Tribal and Other Trust Funds and Individual Indian Monies Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians (Annual Report 2012). "It was not practicable to extend our auditing procedures sufficiently to satisfy ourselves as to the fairness of

trust fund balances in the accompanying financial statements as of September 30, 2012 and 2011 due to the effects of certain parties for whom OST holds assets in trust disagreeing with balances recorded by OST and / or having requested an accounting of their trust funds, and of which certain of these parties have filed claims against the United States Government." KPMG LLP Independent Auditors' Report on Financial Statements (Nov. 9, 2012), *reprinted in* U.S. Dep't of the Interior, Tribal and Other Trust Funds and Individual Indian Monies Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians (Annual Report 2012).

11. Since 1990, in Pub. L. No. 101-512, 104 Stat. 191 (1990), Congress has addressed expressly and repeatedly the effect of Defendants' failure to provide complete and accurate trust accountings to tribes with respect to the commencement of limitations statutes for the bringing of tribal trust claims. *See, e.g.*, Pub. L. No. 112-74, 125 Stat. 786 (2011) ("notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . concerning losses to or mismanagement of trust funds, until the affected tribe . . . has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss . . . ."

**PARTIES**

**Plaintiffs**

12. Plaintiff Sisseton Wahpeton Oyate is a federally-recognized American Indian tribe and is the beneficiary of one or more trust accounts held by the United States as trustee for which the Tribe has never received a complete and accurate trust accounting.

13. Plaintiff Quinault Indian Nation is a federally-recognized American Indian tribe and is the beneficiary of one or more trust accounts held by the United States as trustee for which the Tribe has never received a complete and accurate trust accounting.

14. Plaintiff White Earth Nation is a federally-recognized American Indian tribe and is the beneficiary of one or more trust accounts held by the United States as trustee for which the Tribe has never received a complete and accurate trust accounting.

15. Plaintiff Kickapoo Tribe of Oklahoma is a federally-recognized American Indian tribe and is the beneficiary of one or more trust accounts held by the United States as trustee for which the Tribe has never received a complete and accurate trust accounting.

**Defendants**

16. Defendant Sally Jewell is the Secretary of the Interior, and in that capacity is charged by law with carrying out the duties and responsibilities of the United States as trustee for Plaintiffs' trust accounts.

17. Defendant Jacob J. Lew is the Secretary of the Treasury, and in that capacity is charged by law with carrying out various duties and responsibilities of the United States as trustee for Plaintiffs' trust accounts.

18. Defendants are amenable to suit in this action because, as to the matters complained of herein, 5 U.S.C. § 702 waives Defendants' sovereign immunity from suit and Defendants' actions are contrary to law and in excess of their authority.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1362. This is a civil action brought by federally–recognized Indian tribes and it arises under federal law, including the Constitution, treaties and agreements between the United States and tribes, and federal statutes governing the accounting and management of trust accounts including funds and assets held by the United States as trustee for tribes.

20. Venue is properly in this district under 28 U.S.C. § 1391(e) because this is an action in which Defendants are officers and employees of the United States acting in official capacities, and a substantial part of the events or omissions giving rise to the claims herein has occurred within this judicial district.

## COMPLAINT FOR DECLARATORY RELIEF

### Allegations

21. The federal government has assumed the obligations of a fiduciary trustee with respect to tribal trust accounts including funds and assets. "The responsibility, or trusteeship, for the holding of funds by the United States for the benefit of individual Indians and Indian Tribes" is deeply rooted in treaties, laws, and agreements. U.S. Dep't of the Interior, Off. of the Inspector Gen., Audit Rep. No. 97-I-196 at 1 (Dec. 1996). The government first "adopted the policy of holding tribal funds" in trust in 1820. *Id.* (emphasis added). Since that time Congress has "controlled and managed Tribal and individual Indian [trust] funds through legislation." *Id.* at 1-2.

22. Congress has designated the Secretary of the Department of the Interior as being primarily responsible for the management of Indian affairs generally. 43 U.S.C. § 1457. As such, the Secretary of the Interior is the primary trustee of tribal trust accounts including funds and assets. *See* 25 U.S.C. § 4011. The Interior Secretary in turn has delegated his or her authority to several agencies within the Interior Department. Historically this delegation primarily was to the BIA; more recently the delegation has been to the Office of the Special Trustee (OST) for American Indians. *See* 25 U.S.C. §§ 4041 - 4046.

23. With respect to the investment and certain other duties applicable to particular tribal trust funds, Congress also has designated the Secretary of the Department of the Treasury as the trustee of such trust funds. *See, e.g.,* 25 U.S.C. §§ 155 and 161a(a).

24. The federal government presently purports to hold over $3.4 billion in about 3,000 trust accounts for over 250 tribes. *See* U.S. Dep't of the Interior, Annual Report, Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians at 6 (2012); U.S. Dep't of the Interior, Off. of the Secretary, Off. of the Special Tr. for Am. Indians, News Release, President's FY 2013 Budget for the Office of the Special Trustee for American Indians Requests $146 Million (Feb. 13, 2012). The government also states that it holds for tribes an additional unspecified number of "Other Trust Funds" that it values presently at over $300 million. U.S. Dep't of the Interior, Annual Report, Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians at 6 (2012)

25. Tribal trust accounts generally include: 1) monetary payments required by treaty or in satisfaction of judgments against the United States (judgment funds); and, 2) income or proceeds earned by tribes from land and natural resources that the federal government holds in trust for tribes ("Proceeds of Labor accounts"). *See* U.S. Dep't of the Interior, Bureau of Indian Affairs, Interim Improvement Plan for the Bureau of Indian Affairs, Trust Funds Management Improvement Program, Special Report at 8 (July 1991); U.S. Dep't of the Interior, Off. of the Inspector Gen., Independent Auditors Report on the Financial Statements for Fiscal Years 1998 and 1997 for the Office of the Special Trustee for American Indians Tribal and Other Special Trust Funds and Individual Indian Monies Trust Funds Managed by the Office of Trust Funds Management, Rep. No. 00-I-434 at 4-5 (May 2000); U.S. Dep't of the Interior, Annual Report, Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians at 5-6 (2012). Tribal trust accounts also include the income earned on interest earnings and investments of the funds themselves. U.S. Dep't of the Interior, Annual Report, Tribal and Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians at 6 (2012).

26. Perhaps seventy percent (70%) of tribal trust accounts consist of judgment funds. *See* U.S. Dep't of the Interior, Off. of the Inspector Gen., Audit Rep. No. 97-I-196 at 3; *accord* H.R. Rep. 103-778 at 13 (1994). Judgment funds generally consist of monetary judgments awarded by the Indian Claims Commission and the Court of Federal Claims (and its predecessor courts) for the unlawful appropriation of Indian lands and resources by the federal government. *See* 25 U.S.C. § 1401. The government holds judgment funds in trust from the time that Congress

appropriates the money to satisfy the award until such time as the funds are validly and properly distributed to the trust beneficiaries. *See Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. 639, 646-653 (Fed. Cl. 2006).

27. Perhaps thirty percent (30%) of tribal trust accounts consist of Proceeds of Labor accounts. *See* H.R. Rep. 103-778 at 13. Various acts of Congress authorize the Secretary of the Interior to manage land (including rights-of-ways therethrough and thereover) and natural resources that the federal government holds in trust for tribes as beneficiaries, and to collect income from tribal trust property and to deposit that income in Proceeds of Labor accounts for the benefit of the tribal beneficiaries. *See, e.g.*, 25 U.S.C. §§ 320, 398b, and 399.

28. Other acts of Congress codify, reaffirm, or provide for the fiduciary investment duties of the federal government regarding tribal trust account funds. *See* 25 U.S.C. §§ 161, 161a, 161b, and 162a.

29. Other acts of Congress codify, reaffirm, or provide for other fiduciary trustee duties of the federal government for tribal trust accounts, including, but not limited to, the duties to account for daily and annual trust account fund balances, to provide periodic statements of performance to trust account fund beneficiaries, and to cause to be conducted annual audits of trust account funds. *See* 25 U.S.C. § 4011.

30. Despite the federal government's well-established responsibilities, "[o]ver the years, countless audit reports and internal studies have detailed a litany of problems in BIA's control and oversight of [Indian trust] accounts." U.S. Gen. Acct. Off., Testimony before the U.S. Senate Select Committee on Indian Affairs, Financial Management, Status of BIA's Efforts to Resolve Long-Standing Trust Fund Management Problems at 1 (Aug. 12, 1992).

31. Within the Department of the Interior, the Office of the Inspector General (OIG) has issued over fifty (50) recent reports documenting Indian trust account mismanagement. From 1982 through 1989 alone, the OIG issued thirty (30) audit reports that covered some aspect of the BIA's accounting for and management of Indian trust accounts. *See* U.S. Dep't of the Interior, Off. of the Inspector Gen., Audit Report, Selected Aspects of Indian Trust Fund Activities, Bureau of Indian Affairs, Rep. No. 89-117 at 2 (Sept. 1989).

32. The GAO (now known as the Government Accountability Office) has issued over twenty (20) reports documenting Indian trust account misaccounting and mismanagement. *See* U.S. Gen. Acct. Off., Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Individual Indian Accounts, GAO-02-970T (July 2002); U.S. Gen. Acct. Off., Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T (Feb. 2002).

33. As the trustee for tribal trust accounts, Defendants have an inherent fiduciary duty to provide complete and accurate accountings of the accounts to the beneficiaries. "The obligation of a trustee to provide an accounting is a fundamental principle governing the subject of trust administration." *White Mountain Apache Tribe v. United States,* 26 Cl. Ct. 446, 448 (Cl. Ct. 1992), *aff'd,* 5 F.3d 1506 (Fed. Cir. 1993), *cert. denied,* 511 U.S. 1030 (1994), *citing* T. Bogert, Trusts § 141, at 494 (6th ed. 1987). The inherent fiduciary duty of the government to account for Indian trust accounts has been recognized by the Court of Appeals for this Federal Judicial Circuit. *See Cobell v. Norton,* 240 F.3d at 1102-1104.

34. In addition, Congress has codified and reaffirmed repeatedly the government's preexisting inherent fiduciary duty to provide complete and accurate accountings of tribal trust

accounts. *See Cobell v. Norton*, 240 F.3d at 1102. In 1987 Congress urged an audit and reconciliation of all Indian trust accounts. *See* Pub. L. No. 100-202, 101 Stat. 1329 (1987). Congress expected full accountings and audits and reconciliations of all Indian trust accounts to the earliest possible date, *i.e.,* a reconstruction of all historical transactions for all years for all Indian trust accounts. *See, e.g.*, Pub. L. No. 101-121, 103 Stat. 701 (1989).

35. In 1994 Congress enacted the American Indian Trust Management Reform Act, 25 U.S.C. §§ 4001 - 4061. This Act also requires the federal government to provide Indian trust account beneficiaries with complete and accurate accountings, and to cause annual audits of all Indian trust fund accounts to be conducted. 25 U.S.C. §§ 4044 and 4011(c).

36. Unable to comply with these inherent fiduciary duties and congressional mandates on its own, the BIA tried to bid out the project in the early 1990s. *See* U.S. Gen. Acct. Off., Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 2. In 1991 the private accounting firm of Arthur Andersen & Co. (AA) was awarded a $12 million Indian trust account reconciliation contract. *Id.*; BIA Contract No. CMK00129391. AA's tribal trust account work under the contract ultimately consisted of researching a limited and selected population of tribal accounts for the limited and selected time period of Fiscal Years 1973 - 1992. *Id.* at 1. Nevertheless, by the project's end AA's contract had been modified twenty-nine (29) times – primarily to reduce the project's scope and procedures – and its cost had escalated to $ 21 million. *Id.* at 2-3 and 6.

37. Even with respect to the limited and selected tribal accounts reviewed for the limited and selected time period, AA determined that insufficient records were available to conduct complete accountings or reconciliations. *See* U.S. Gen. Acct. Off., Report to the Committee on

Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 4-5. The BIA agreed to seven "alternative procedures" that AA ultimately applied to selected tribal accounts: 1) Account Statements; 2) Basic Reconciliation; 3) Investment Analysis; 4) Analytic Review; 5) Systems Reconciliation; 6) Deposit Lag Time; and, 7) Fill the Gap. *Id.* at 16-20. Many of these alternative procedures are detailed in the ninety (90) "issue papers" approved by the BIA for the project which address changes in the scope and procedures of AA's work such as the calculation of transaction dates. *Id.* at 6.

38. In fiscal years 1990 - 1995, Congress mandated that any Indian trust account audit and reconciliation work be certified by an independent third party. *See, e.g.*, Pub. L. No. 101-121, 103 Stat. 701 (1989) (the reconciliation results must be "certified by an independent party as the most complete reconciliation of such funds possible"). In September 1993, the BIA awarded a certification contract to Coopers & Lybrand, CPA. *See* U.S. Gen. Acct. Off., Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 7. However, the BIA terminated the certification contract in November 1995 before certification could be completed. *Id.* at 7-8. Thus, Defendants never have complied with the congressional reconciliation project certification mandate.

39. AA concluded its tribal trust account contract work in the fall of 1995 with the preparation of "Agreed-Upon Procedures and Findings Reports" for limited and selected tribal trust accounts for fiscal years 1973 - 1992. Because the American Indian Trust Fund Management Reform Act of 1994 required the Secretary of the Interior to provide tribes with

reconciled account statements as of September 30, 1995, 25 U.S.C. § 4044, the BIA prepared its own statements for limited and selected tribal trust accounts for the time period fiscal years 1993 through 1995. *See* U.S. Gen. Acct. Off., Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 5 and 16.

40. In 1996, the BIA provided AA Report packages to tribes. *See* U.S. Gen. Acct. Off., Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 at 5-66. The Report packages included the fiscal years 1973 - 1992 AA Reports and the BIA's fiscal years 1993 - 1995 account statements. *Id.* at 1-2, 5-7, and 16.

41. From the beginning, the Interior Department stated that the AA Reports were not audits made in accordance with generally accepted auditing standards. *See* Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996). The Interior Department, however, tried to get tribes to agree that the AA Reports were "as full and complete accountings as possible" of their trust accounts. *See* "Acknowledgment" form appended to Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996).

42. The BIA itself, however, since has admitted that the AA Reports are not complete and accurate accountings of tribal trust accounts. *See* BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ("Despite five

years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds.”).

43. The OST also has admitted that the AA Reports are not complete and accurate accountings. *See* U.S. Dep’t of the Interior, Off. of the Special Tr. for Am. Indians, Strategic Plan to Implement the Reforms required by the American Indian Trust Fund Management Reform Act of 1994 at Part 8, page 5 (Apr. 1997) (the AA Basic Reconciliation effort “disclosed the types of problems which prevent a full accounting” of tribal trust accounts).

44. The GAO has reported repeatedly on the AA project shortcomings. *See, e.g.*, U.S. Gen. Acct. Off., Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA’s Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996). The GAO is of the view that the AA Reports do not reflect reliable, accurate, or complete accountings of tribal trust accounts because, *inter alia*, they were not conducted pursuant to generally accepted accounting principles, but instead were based on procedures defined by the BIA which imposed limitations on the scope of work to be done and made changes in methodologies over the course of the project; they were premised on the erroneous assumption that accountings could be done based on existing information from the BIA, without determining whether that information was accurate historically; and, they were based on accounts for which records and information were non-existent or could not be located. *Id; see also* U.S. Gen. Acct. Off., Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 2 (Feb. 7, 2002).

45. Task Forces and individual members of Congress have stated publicly that the AA Reports are not complete and accurate accountings of tribal trust accounts. “Billions of dollars of

transactions conducted by Federal officials were found to be unreconcilable by Arthur Andersen LLP in a reconciliation study completed in 1995." Task Force on Indian Fund Management, H.R. Rep. 104-878 at 29 (1997). "It was clear when these [AA] reports were sent to Indian tribes in 1996 that they were not a full and accurate reconciling of the tribal accounts." 148 Cong. Rec. H704-01 (Mar. 6, 2002) (statement of Rep. Hansen).

46. Since, and notwithstanding the AA project, the federal government's accounting for and management of tribal trust accounts remains substandard. As recently as 2003 the GAO agreed that despite some improvements, Indian trust fund "account holders have no assurance that their account balances are accurate . . . ." U.S. Gen. Acct. Off., Report, Major Management Challenges and Program Risks, Department of the Interior, Performance and Accountability Series, GAO-03-104 (Jan. 2003).

47. From 1996 - 2012 the OST's annual financial statement audits have been qualified because, *inter alia,* independent public accounting firms performing the audits have been "unable to satisfy themselves as to the fairness of the trust fund balances." Letter from Off. of Inspector Gen., U.S. Dep't of the Interior (Nov. 9, 2012), *reprinted in* U.S. Dep't of the Interior, Tribal and Other Trust Funds and Individual Indian Monies Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians (Annual Report 2012). "It was not practicable to extend our auditing procedures sufficiently to satisfy ourselves as to the fairness of trust fund balances in the accompanying financial statements as of September 30, 2012 and 2011 due to the effects of certain parties for whom OST holds assets in trust disagreeing with balances recorded by OST and / or having requested an accounting of their trust funds, and of which certain of these parties have filed claims against the United States Government." KPMG LLP Independent

Auditors' Report on Financial Statements (Nov. 9, 2012), *reprinted in* U.S. Dep't of the Interior, Tribal and Other Trust Funds and Individual Indian Monies Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians (Annual Report 2012).

48. This Court has opined as to what constitutes a proper trust accounting.

> Any formal accounting of a trust conducted by a trustee must include at least four basic processes. First is the collection process, which entails the collection of all documents and records that must be analyzed in order to prepare the accounting. Second is the accounting process proper. In this stage, the trustee analyzes the documents and records it has collected. Utilizing the information contained in such documents, the trustee creates a detailed report describing the trustee's conduct during the relevant time period, including a description of each item of property within the trust corpus, all items of property received into or disbursed from the trust, all income earned by the trust, and all expenses paid by the trust. This report is the "accounting statement." Third is the reporting process, which entails the delivery of the accounting statement to the beneficiaries of the trust. These three processes occur sequentially. However, there is also a fourth process that occurs simultaneously with the other three: the quality control process. During the collection process, the quality control process consists of measures taken by the trustee to ensure that it is collecting all documents and records necessary to perform an accounting, and that the information contained in the documents and records it collects are reliable and accurate. During the accounting process, the quality control process consists of measures taken by the trustee to ensure that the accounting statement it prepares accurately reflects all of the relevant information contained in the documents and records it has collected. Finally during the reporting process, the quality control process consists of measures taken by the trustee to ensure that all beneficiaries of the trust receive the accounting statement prepared by the trustee, and that they are furnished with all the information they need to make sense of the statement.

*Cobell v. Norton,* 283 F.Supp.2d 66, 147-148 (D.D.C. 2003).

The Court of Appeals in the same case has held that

> Appellants [the government] never explain how one can give a *fair* and *accurate* accounting of *all* [Indian trust fund] accounts without first reconciling the accounts, taking into account past deposits, withdrawals, and accruals. Indeed, the government's own expert acknowledged that one could not determine an accurate account balance without confirming historical account balances.

> . . . . [T]he accounting must be sufficient to serve the purposes for which a trust accounting is typically conducted. By this standard, the district court's conclusion that the management of a trust and rendering of an adequate accounting requires the locating and retention of records, operational computer systems, and adequate staffing was, in plaintiffs' words, 'self-evident.' Anything less would produce an inadequate accounting.

*Cobell v. Norton*, 240 F.3d at 1102 -1103 (emphasis in original). Neither the AA Reports nor any other documents or data provided by the government meet these basic mandatory standards for complete and accurate accountings.

49. Since 1990 and to the present, in recognition of the failure of the federal government to provide complete and accurate tribal trust accountings, Congress has tolled the accrual of tribal trust claims. *See* Pub. L. No. 101-512, 104 Stat. 1915 (1990); Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. No. 102-381, 106 Stat. 1374 (1992), Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994); Pub. L. No. 104-134, 100 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996); Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No. 106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000); Pub. L. No. 107-63, 115 Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005); Pub. L. No. 110-161, 121 Stat. 1844 (2007); Pub. L. No. 111-8, 123 Stat. 524 (2009); Pub. L. No. 111-88, 123 Stat. 2904 (2009); Pub. L. No. 112-74, 125 Stat. 786 (2011) (all providing to the effect that, "notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . . concerning losses to or mismanagement of trust funds, until the affected tribe . . . has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss").

50. Defendants admittedly and consistently have failed and continue to fail to comply with their inherent fiduciary and statutory duties to provide complete and accurate accountings to tribal trust account beneficiaries, and to comply with other inherent and statutory fiduciary duties as trustees.

51. Upon information and belief, Defendants' breaches and continuing breaches of trust, including, but not limited to, their failure to account for and manage properly tribal trust accounts including funds and assets, have resulted and continue to result in harm to the Plaintiffs as trust beneficiaries. However, the extent of such harm is unknown to Plaintiffs first and foremost because Defendants never have provided Plaintiffs with complete and accurate accountings of their trust accounts including funds and assets.

52. Plaintiffs have no adequate administrative remedies and have suffered from final agency action that is arbitrary, capricious, an abuse of discretion, contrary to law, in excess of authority or is otherwise unlawful or unreasonably delayed. Only this Court can provide to Plaintiffs the relief to which they are entitled.

**COUNT I**

**Declaratory Judgment that the Arthur Andersen Reports are not complete and accurate accountings of tribal trust accounts and setting forth the standards that would constitute such accountings**

53. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 52 above.

54. Defendants' inherent and statutory fiduciary duties include, among others, the duty to provide Plaintiffs with complete and accurate accountings of each of Plaintiffs' trust accounts including funds and assets.

55. The AA Reports provided by Defendants to Plaintiffs are not complete and accurate accountings of each of Plaintiffs' trust accounts, and Defendants never otherwise have provided Plaintiffs with complete and accurate accountings of each of Plaintiffs' trust accounts.

56. Plaintiffs are entitled to a declaratory judgment that the AA Reports provided by Defendants to Plaintiffs are not complete and accurate accountings of each of Plaintiffs' trust accounts, and that Defendants never otherwise have provided Plaintiffs with complete and accurate accountings of each of Plaintiffs' trust accounts as required by law.

57. This Court has the power to declare the standards governing complete and accurate accountings of Plaintiffs' trust accounts.

58. Plaintiffs are entitled to a declaratory judgment regarding the standards governing complete and accurate accountings of Plaintiffs' trust accounts.

**COUNT II**

**Injunctions Compelling Accountings, Documents Preservation, and That Accounts be Corrected**

59. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 52 above.

60. Defendants' failure and continuing failure to provide Plaintiffs with complete and accurate accountings of their trust accounts has caused and will continue to cause Plaintiffs irreparable injury because without such accountings they are unable to determine whether there have been losses and other harm to their trust accounts.

61. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to perform their duty and provide Plaintiffs with complete and accurate accountings of each of Plaintiffs' trust accounts pursuant to accounting standards ordered by this Court.

62. Ancillary to this demand for complete and accurate accountings, Plaintiffs are entitled to mandatory injunctive relief directing Defendants to preserve any and all documents concerning Plaintiffs' trust accounts including funds and assets that are in the custody, possession, or control of Defendants or their agents, contractors, or consultants.

63. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to correct Plaintiffs' trust fund account balances in accordance with the standards for complete and accurate accountings, and to make Plaintiffs' accounts whole as if there had been no breaches of trust, negligence, or wrongdoing by Defendants.

**COUNT III**

**Administrative Procedures Act**

64. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 52 above.

65. Plaintiffs have suffered legal wrongs and adverse effects and have been aggrieved because of final agency action that is arbitrary, capricious, an abuse of discretion, or contrary to law, and from unlawful or unreasonably delayed agency action.

66. Plaintiffs are entitled to have this Court decide all relevant questions of law concerning tribal trust accountings and to have this Court issue corresponding declaratory and other equitable relief.

67. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to perform their duty and provide Plaintiffs with complete and accurate accountings of each of Plaintiffs' trust accounts pursuant to accounting standards ordered by this Court.

68. Plaintiffs are entitled to mandatory injunctive relief directing Defendants to preserve any and all documents concerning Plaintiffs' trust accounts including funds and assets that are in the custody, possession, or control of Defendants or their agents, contractors, or consultants.

69. Plaintiffs are entitled to mandatory injunctive relief compelling Defendants to correct Plaintiffs' trust account balances in accordance with the standards for complete and accurate accountings, and to make Plaintiffs' accounts whole as if there had been no breaches of trust, negligence, or wrongdoing by Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. For a determination that Defendants are in violation of the Administrative Procedures Act (APA), and that Defendants are amenable to suit in this action under the APA and because Defendants' actions are contrary to law and in excess of their authority.

2. For a determination that Defendants have been and continue to be in breach of trust, negligent, or engaged in wrongful conduct regarding the trust accounts including funds and assets of Plaintiffs;

3. For a declaration that the AA Reports provided by Defendants to Plaintiffs are not complete and accurate accountings of each of Plaintiffs' trust accounts, and that Defendants never otherwise have provided Plaintiffs with complete and accurate accountings of each of Plaintiffs' trust accounts as required by law;

4. For a declaration of the accounting standards governing complete and accurate accountings of Plaintiffs' trust accounts;

5. For a mandatory injunction compelling Defendants to provide Plaintiff with complete and accurate accountings of Plaintiffs' trust accounts;

6. For a mandatory injunction immediately directing Defendants to preserve during the pendency of this action any and all documents concerning Plaintiffs' trust accounts including funds and assets that are in the custody, possession, or control of Defendants or their agents, contractors, or consultants.

7. For a mandatory injunction compelling Defendants to correct Plaintiffs' trust account balances and make the accounts whole as if there had been no breaches of trust, negligence, or wrongdoing by Defendants up to and including the date of entry of final judgment in this action;

8. For a mandatory injunction directing Defendants to develop and implement an adequate, efficient, and reasonably timely plan and process for implementing and achieving the relief granted;

9. For a declaration that this Court shall retain continuing jurisdiction to supervise and effectuate Defendants' implementation and achievement of the relief granted;

10. For an award of Plaintiffs' costs of suit, including, without limitation, attorneys' fees and other costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and attorneys' fees, expert witness costs, and other costs as allowed by law and equity ; and,

11. For such other, further, or different relief as may be just and equitable.

Dated this 30th day of April, 2013

Respectfully submitted,

_/s/ *Melody L. McCoy*_______________

MELODY L. MCCOY, USDC Bar No. CO0043
JOHN E. ECHOHAWK
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
telephone (303) 447-8760
facsimile (303) 443-7776
e-mail mmccoy@narf.org

ATTORNEYS FOR PLAINTIFFS