IN THE UNTED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SISSETON WAHPETON OYATE OF THE            )
LAKE TRAVERSE RESERVATION, *et al.*,      )
                                          )
          Plaintiffs,                     )
                                          )
                                          )      No. 13-cv-601-TFH
v.                                        )
                                          )
JEWELL, *et al.*,                         )
                                          )
          Defendants.                     )

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

MELODY L. MCCOY
U.S. Dist. Ct. No. CO 0043
JOHN E. ECHOHAWK
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel:  (303) 447-8760
Fax:  (303) 443-7776

*Attorneys for Plaintiffs*

February 14, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

ARGUMENT .............................................................................................................. 3

   I.   STANDARDS FOR DISMISSAL ...................................................................... 3

   II.   PLAINTIFFS STATE VALID AND PROPER CLAIMS OVER WHICH THIS COURT HAS JURISDICTION ............................................................... 5

      A.  There is Subject Matter Jurisdiction Under 28 U.S.C. §§ 1331 and 1362 .............. 5

      B.  5 U.S.C. § 702, Provides the Requisite Waiver of Sovereign Immunity For All of Plaintiffs' Claims; Those Having Their Basis Outside the APA, As Well As Those Based on the APA Itself ........................................................ 5

          1.  Waiver As To Non-APA Claims ................................................... 6

          2.  Waiver As To APA Claims .......................................................... 8

          3.  Waiver for Equitable Monetary Relief ........................................ 9

      C.  Plaintiffs Have Stated Well-Grounded Causes of Action for Trust Accountings, Trust Account Balance Correction and Wholeness, and Trust Records Preservation Based on Law Outside the APA ...................................... 10

          1.  Trust Accountings ..................................................................... 11

          2.  Trust Account Balance Correction and Wholeness .................... 14

          3.  Trust Records Preservation ........................................................ 21

      D.  Additionally and Alternatively, Plaintiffs Have Stated Proper Causes of Action Under the APA ............................................................................ 22

          1.  Agency action unlawfully withheld or unreasonably delayed ............... 23

          2.  Agency action that is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law .................................... 25

      E.  PLAINTIFFS' CLAIMS ARE TIMELY ............................................. 26

CONCLUSION ........................................................................................................ 33

i

# TABLE OF AUTHORITIES

## CASES

*Abigail Alliance for Better Access to Dev'tal Drugs,* 2004 WL 3777340 (D.D.C. Aug. 30, 2004), *rev'd on other grounds,* 445 F.3d 470 (D.C. Cir. 2006) ....................................................................26

*Alexander v. Comm'r of Internal Rev.,* 825 F.2d 499 (D.C. Cir. 1987) ........................................31

*America's Cmty. Bankers v. F.D.I.C.,* 200 F.3d 822 (D.C. Cir. 2000) ...........................................10

*American Chem. Council v. U.S. Dep't of H.H.S.,* 922 F.Supp.2d 56 (D.D.C. 2013) ..................23

*American Fed'n v. District of Columbia,* 796 F.Supp.2d 136 (D.D.C. 2011) ................................4

*American Lung Ass'n v. E.P.A.,* 134 F.3d 388 (D.C. Cir. 1998) ....................................................30

*American R.R. & Transp. Builders Ass'n v. E.P.A.,* 865 F.Supp.2d 72 (D.D.C. 2012), *aff'd,* 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) ...........................................................................8

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006) ...............................................................................1

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...........................................................................................4

*Assiniboine and Sioux Tribe v. Norton,* 211 F.Supp.2d 157 (D.D.C. 2002) .................................12

*Assiniboine & Sioux Tribes, et al. v. Norton,* 527 F.Supp.2d 130 (D.D.C. 2007) ........................29

*Beaty v. F.D.A.,* 853 F.Supp.2d 30 (D.D.C. 2012) ........................................................................25

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .....................................................................4

*Bell v. Hood,* 327 U.S. 678 (1946) ...................................................................................................1

*Beshir v. Holder,* 853 F.Supp.2d 1 (D.D.C. 2011) ................................................................. 23-24

*Bimini Superfast Operations. v. Winkowski,* 2014 WL 92897 (D.D.C. Jan. 10, 2014) ..................2

*Blair-Bey v. Quick,* 151 F.3d 1036 (D.C. Cir. 1998) ....................................................................31

*Bowen v. Massachusetts,* 487 U.S. 879 (1988) ..............................................................................10

*Bryan v. Itasca County,* 426 U.S. 373 (1976) ................................................................................32

*Chamber of Commerce v. Reich,* 74 F.3d 1322 (D.C. Cir. 1996) ...................................................6

*City of Dover v. U.S. E.P.A.,* 2013 WL 6157926 (D.D.C. Nov. 15, 2013)....................................23

*Cobell v. Babbitt (Cobell I),* 30 F.Supp.2d 24 (D.D.C. 1998) ...............................................9, 28

*Cobell v. Babbitt (Cobell II),* 37 F.Supp.2d 6 (D.D.C. 1999)...........................................................21

*Cobell v. Babbitt (Cobell V),* 91 F.Supp.2d, 1 (D.D.C. 1999)...................................................21, 22

*Cobell v. Babbitt (Cobell VI),* 240 F.3d 1081 (D.C. Cir. 2001)........................................................21

*Cobell v. Kempthorne (Cobell XX),* 532 F.Supp.2d. 37 (D.D.C. 2008)...........................................19

*Cobell v. Norton,* 260 F.Supp.2d 98 (D.D.C. 2003) ................................................................27, 28

*Cobell v. Norton (Cobell XV),* 229 F.R.D. 5 (D.D.C. 2005)............................................................21

*Cobell v. Norton,* 377 F.Supp.2d 4 (D.D.C. 2005) ........................................................................13

*Cobell v. Salazar (Cobell XXII),* 573 F.3d 808 (D.C. Cir. 2009),
*cert. dismissed,* 130 S.Ct. 3497 (2010) .......................................................................................12

*Cobell v. Salazar,* 679 F.3d 909 (D.C. Cir. 2012),
*cert. denied,* 133 S.Ct. 543 (2012) ..............................................................................................13

*County of Oneida v. Oneida Indian Nation,* 470 U.S. 226 (1985) .................................................32

*Covelo Indian Community v. Watt,* 551 F.Supp. 366 (D.D.C. 1982) ..............................................32

*Crocker v. Piedmont Aviation,* 49 F.3d 735 (D.C. Cir. 1995),
*cert. denied,* 516 U.S. 865 (1995)..................................................................................................9

*Daniels v. United States*, 947 F.Supp.2d 11 (D.D.C. 2013) ...........................................................4

*Davis v. United States,* 2014 WL 98635 (D.D.C. Jan. 10, 2014) ...................................................8

*Delano Farms Co. v. California Table Grape Comm'n,* 655 F.3d 1337 (Fed. Cir. 2011),
*cert. denied,* 133 S.Ct. 644 (2012) .................................................................................................6

*El Paso Natural Gas v. U.S.,* 774 F.Supp.2d 40 (D.D.C. 2011)...................................................23

*Fletcher v. United States,* 730 F.3d 1206 (10th Cir. 2013)............................................................12

*Fletcher v. United States,* 2014 WL 356895 (N.D. Okla. Jan. 31. 2014) .....................................12

*Great Rivers Habitat Alliance v. F.E.M.A.,* 615 F.3d 985 (8th Cir. 2010)....................................11

*Howard R.L. Cook & Tommy Shaw Foundation v. Billington*, 737 F.3d 767
(D.C. Cir. 2013) ...................................................................................................11

*Hunter v. F.E.R.C.*,711 F.3d 155 (D.C. Cir. 2013) ........................................................31

*Ikon Global Mkts. v. Commodity Futures Trading Comm'n,* 859 F.Supp.2d 162
(D.D.C. 2012) .....................................................................................................26

*In re Center for Auto Safety,* 793 F.2d 1346 (D.C. Cir. 1986) ....................................26

*Kosty v. Lewis,* 319 F.2d 744 (D.C. Cir. 1963), *cert. denied,* 375 U.S. 964 (1964) .....................27

*M.K. v. Tenet,* 99 F.Supp.2d 12 (D.D.C. 2000) ...........................................................10

*N.R.D.C. v. U.S. Dep't of State,* 658 F.Supp.2d 105 (D.D.C. 2009) ...........................................3, 4

*National Ass'n of Home Builders v. Norton,* 415 F.3d 8 (D.C. Cir. 2005).................................23

*National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,* 417 F.3d 1272
(D.C. Cir. 2005) .................................................................................................26

*National Treasury Emp. Union v. Campbell*, 589 F.2d 669 (D.C. Cir. 1978)...............................1

*Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55 (2004)...............................24

*Oneida Indian Nation v. County of Oneida,* 414 U.S. 661 (1974) ...............................27

*Oryszak v. Sullivan*, 576 F.3d 522 (D.C. Cir. 2009) ....................................................3-4

*Otoe-Missouria Tribe v. Kempthorne,* 2008 WL 5205191 (W.D. Okla. Dec. 10, 2008),
*abrogated on other grounds, Gilmore v. Weatherford,* 694 F.3d 1160 (10th Cir. 2012) ....... *passim*

*Palmore v. Superior Court,* 515 F.2d 1294 (D.C. Cir. 1975), *judgment vacated and remanded on
other grounds,* 429 U.S. 915 (1976) ...............................................................31

*Pelt v. Utah,* 661 F.Supp.2d 1267 (D. Utah 2009)............................................27, 28, 29

*Presidential Gardens Assocs. v. United States,* 175 F.3d 132 (2d Cir. 1999) ...............................5

*Radzanower v. Touche Ross & Co.,* 426 U.S. 148 (1976)............................................31

*Rafeedie v. I N.S.,* 880 F.2d 506 (D.C. Cir. 1989) .......................................................23

*Reliable Automatic Sprinkler Co. v. Consumer Prod Safety Comm'n,* 324 F.3d 726
(D.C. Cir. 2003) ...................................................................................................3

*Royer v. Federal Bureau of Prisons,* 933 F.Supp.2d 170 (D.D.C. 2013) .........................................3

*Sac and Fox Nation v. Norton,* 585 F.Supp.2d 1293 (W.D. Okla. 2006) .......................................2

*Schnapper v. Foley*, 667 F.2d 102 (D. C. Cir. 1981),
*cert. denied*, 455 U.S. 948 (1982) ............................................................................6

*Seminole Nation v. Salazar,* 2009 WL 919435 (E.D. Okla. Mar. 31, 2009),  *abrogated on other grounds, Gilmore v. Weatherford,* 694 F.3d 1160 (10th Cir. 2012) ....................................... *passim*

*Shoshone Indian Tribe v. United States,* 364 F.3d 1339 (Fed. Cir. 2004) ....................................27

*Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987) ................................................................25

*South Carolina v. Catawba Indian Tribe,* 476 U.S. 498 (1986) .................................................27

*The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989) ........................7

*Tonkawa Tribe v. Kempthorne*, 2009 WL 742896 (W.D. Okla. Mar. 17, 2009), *abrogated on other grounds, Gilmore v. Weatherford,* 694 F.3d 1160 (10th Cir. 2012)............................. *passim*

*Trudeau v. Federal Trade Comm'n*, 456 F.3d 178 (D. C. Cir. 2006) ....................................1, 6, 7

*United Am. v. N.B.C.-U.S.A. Hous.,* 400 F.Supp.2d 59 (D.D.C. 2005) ...........................................5

*United States v. Bethlehem Steel Corp.,* 315 U.S. 289 (1942) ......................................................31

*United States v. Jicarilla Apache Nation,* 131 S.Ct. 2313 (2011) ................................................12

*United States v. Mitchell*, 463 U.S. 206 (1983) ............................................................................7

*United States v. Regenerative Sciences,* 878 F.Supp.2d 248 (D.D.C. 2012), *aff'd,* 2014 WL 393602 (D.C. Cir. Feb. 4, 2014) ............................................................................27

*United States v. Rice,* 886 F.2d 334, 1989 WL 112460 (9th Cir. 1989) ........................................32

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003) ...........................................7

*Van Allen v. U.S. Dep't of Veterans Affairs,* 925 F.Supp.2d 119 (D.D.C. 2013) ...........................8

*Vann v. Kempthorne*, 467 F.Supp.2d 56 (D.D.C. 2006), *rev'd in part on other grounds,*
534 F.3d 741 (D.C. Cir. 2008) .............................................................................25

*Veterans for Common Sense v. Shinseki,* 644 F.3d 845 (9th Cir. 2011), *vacated on other grounds,*
678 F.3d 1013 (9th Cir. 2012) (*en banc*) ............................................................7, 11

*Villegas v. United States,* 2013 WL 3990809 (E.D.Wash. Aug. 5, 2013) .....................................13

*Washington Toxics Coalition v. E.P.A.,* 413 F.3d 1024 (9th Cir. 2005), *cert. denied,*
546 U.S. 1090 (2006) ..........................................................................................................2

*Wilderness Soc. v. Kane County,* 632 F.3d 1162 (10th Cir. 2011) ................................................11

## STATUTES

5 U.S.C. § 551(13) ............................................................................................................23, 25

5 U.S.C. § 702................................................................................................................ *passim*

5 U.S.C. § 704.....................................................................................................................7, 26

5 U.S.C. § 706(1) .................................................................................................22, 23, 24, 25

5 U.S.C. § 706(2) ................................................................................................22, 25, 26

25 U.S.C. §162a ............................................................................................................... *passim*

25 U.S.C. § 4011 .............................................................................................................. *passim*

25 U.S.C. § 4044 .............................................................................................................. *passim*

28 U.S.C. § 1331 ....................................................................................................................3, 5

28 U.S.C. § 1362 ....................................................................................................................3, 5

28 U.S.C. §1505 ......................................................................................................................8

28 U.S.C. § 2401(a) .............................................................................................................27, 28

28 U.S.C. § 2415 ....................................................................................................................32

Pub. L. No. 100-202, 101 Stat. 1329 (1987).....................................................................14

Pub. L. No. 107-153, 116 Stat. 79 (2002)........................................................29, 30, 31, 32

Pub. L. No. 109-158, 119 Stat. 2954 (2005)....................................................29, 30, 31, 32

Pub. L. No. 113-76, 128 Stat. 5 (2014)...............................................................................29

# LEGISLATIVE MATERIALS

S. Rep. No. 107-138 (2002) ................................................................................. 30

S. Rep. No. 109-201 (2005) ........................................................................... 30, 31

H.R. Rep. No. 101-1006 (1991) ..................................................................... 14, 15

H.R. Rep. No. 102-499 (1992) .......................................................... 15, 16, 17, 21

H.R. Rep. No. 102-1086 (1992) .............................................................. 16, 17, 22

*BIA Management of Indian Trust Funds, Hearing on H.R. 1846 and H.R. 4833 before the H. Subcomm. on Native American Affairs, of the Comm. on Natural Resources,* 103rd Cong. (1994) (Statement of Brian P. Crowley, Director, Planning and Reporting, Accounting and Financial Management Division, U.S. General Accounting Office) ................... 19-20

*BIA Management of Indian Trust Funds, Hearing on H.R. 1846 and H.R. 4833 before the H. Subcomm. on Native American Affairs, of the Comm. on Natural Resources,* 103rd Cong. (1994) (statement of George H. Stalcup, Associate Director, Financial Integrity Issues, Accounting and Information Management Division) ....................................................... 20

*Bureau of Indian Affairs' Management of the $2 Billion Indian Trust Fund, Hearing before the H. Environment, Energy, and Natural Resources Subcomm. of the Comm. on Government Operations,* 102nd Cong. (1991) (Statement of Jeffrey C. Steinhoff, Director, Civil Audits, Accounting and Financial Management Division, U.S. General Accounting Office) ....................................................................................... 17

*Continuing Failure to Adequately Manage the Indian Trust Fund, Hearings before the H. Subcomm. on Environment, Energy, and Natural Resources, of the Comm. on Gov't Operations,* 101st Cong. (1990) (Letter from George Gover, Acting Director, Office of Trust Fund Management, Department of the Interior) ....................................................... 17

*Indian Trust Fund Management: Oversight Hearing before the S. Select Comm. on Indian Affairs,* 102nd Cong., at 112-122 (1992) (statement of Rep. Mike Synar, Chairman, H. Subcomm. on Environment, Energy, and Natural Resources of the Comm. on Government Operations) ................................................................................. 15

*Indian Trust Fund: Oversight Hearing before the S. Select Comm. on Indian Affairs*, 99th Cong., (1986) (statement of Ross Swimmer, Assistant Secretary for Indian Affairs) ............ 15, 16

*Native American Trust Fund Accounting and Management Reform Act of 1993, Hearing on S. 925 before the S. Comm. on Indian Affairs,* 103rd Cong. (1993) (Statement of Brian P. Crowley, Director, Planning and Reporting, Accounting and Financial Management Division, U.S. General Accounting Office) ....................................................................... 19

*Review of the Bureau of Indian Affairs' Management of the $1.7 Billion Indian Trust Fund, Hearing before the H. Subcomm. on Environment, Energy, and Natural Resources of the Comm. on Government Operations,* 101st Cong. (1989) (testimony and statement of Dr. Eddie Brown, Assistant Secretary for Indian Affairs) .......................................................16

151 Cong. Rec. S11567 (daily ed. Oct. 19, 2005) (statement of Sen. McCain) .........................31

## ADMINISTRATIVE MATERIALS

KPMG  LLP Independent Auditors' Report on Financial Statements (Nov. 13, 2013), *reprinted in* U.S. Dep't of the Interior, Tribal And Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians (Annual Report 2013) .......................................................20

U.S. Gen. Acct. Off., GAO-03-104, Report, Major Management Challenges and Program Risks, Department of the Interior, Performance and Accountability Series (2003) .....................20

U.S. Gen. Acct. Off., GAO/AFMD-92-38, Financial Management:  BIA Has Made Limited Progress in Reconciling Trust Accounts and Developing a Strategic Plan (1992)............19

U.S. Gen. Acct. Off., GAO/AIMD-96-93, Report to the S. Comm. on Indian Affairs, Financial Management:  BIA's Tribal Trust Fund Account Reconciliations Results (1996) ...........18

U.S. Gen. Acct. Off., GAO/T-AFMD-92-6, Financial Management:  BIA Has Made Limited Progress in Reconciling Indian Trust Funds Accounts and Developing a Strategic Plan; Testimony before the Subcomm. on Interior and Related Agencies, Comm. on Appropriations (1992)........................................................................................19

U.S. Gen. Acct. Off., GAO/T-AIMD-94-99, Testimony before the H. Subcomm. on Interior and Related Agencies of the Comm. on Appropriations, Financial Management:  Status of BIA's Efforts to Reconcile Indian Trust Fund Accounts and Implement Management Improvements (1994)...................................................................................18, 19

## COURT RULES

Fed. R. Civ. P. 12(b)(1)..........................................................................................3, 27

Fed. R. Civ. P. 12(b)(6)......................................................................................3, 4, 27

## OTHER

Black's Law Dictionary (9th ed. 2009)..........................................................................20

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs filed this action on April 30, 2013.  ECF No. 1.  Following a Second Amended Complaint (SAC), Defendants have "move[d] to dismiss plaintiffs' complaint for lack of subject matter jurisdiction because defendants have not waived their sovereign immunity from plaintiffs' claims." ECF No. 19 at 1.  This seemingly straightforward Motion to Dismiss (MTD) is anything but, however, as Defendants conflate and confuse matters on at least two levels.  The MTD must be denied, but it is necessary for conceptual clarity to point out the major troubling mix-ups in Defendants' legal arguments.

First, Defendants collapse the merits of Plaintiffs' claims into questions of jurisdiction and waiver of sovereign immunity, contrary to well-established law that those matters are legally distinct and must be treated separately.[1]  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510-13 (2006) (warning of the dangers of failing to distinguish between jurisdictional issues and those going to the merits of a claim);  *Bell v. Hood*, 327 U.S. 678, 682-683 (1946) ("Jurisdiction … is not defeated … by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover");  *National Treasury Emp. Union v. Campbell*, 589 F.2d 669, 672-677 (D.C. Cir. 1978) (extensive discussion of *Bell v. Hood* and indicating the proper approach is to treat both jurisdiction and sovereign immunity separately from failure to state a claim); *accord Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 183-184 (D. C. Cir. 2006).

The second source of confusion is Defendants' failure to adequately acknowledge / differentiate between Plaintiffs' non-APA claims contained in Counts I and II, which rely on the waiver of sovereign immunity in the APA (5 U.S.C. § 702), but state causes of action outside of

---

[1] For example, Defendants assert that they "have not waived their sovereign immunity from plaintiffs' 'inherent fiduciary duty'" claims, implying that the immunity waiver is tied to the validity of Plaintiffs' substantive claims.  MTD at 1.  This is an egregious example of merging claims merits with sovereign immunity analysis.

1

the APA, and Plaintiffs' claims in Count III which rely on the APA for the causes of action asserted as well as for the waiver of sovereign immunity.  SAC at ¶s 60-75.  This results in unclear analysis and erroneous statements such as "Because plaintiffs' complaint fails to direct its attack against some particular agency action that has caused them harm and constitutes final agency action, the United States has not waived its sovereign immunity from plaintiffs' claims and they should be dismissed for lack of subject-matter jurisdiction."  MTD at 2.  Once again Defendants merge the merits with questions of jurisdiction and sovereign immunity by incorrectly implying that discrete agency action and final agency action are necessary to jurisdiction and the immunity waiver, *cf. Bimini Superfast Operations. v. Winkowski,* 2014 WL 92897, at *7 n.5  (D.D.C. Jan. 10, 2014) (citations omitted) (whether "agency action is final under the APA is not a jurisdictional question"), and compound this error by incorrectly treating all of Plaintiffs' claims as requiring final agency action, whereas it is only claims based on the APA itself which have that requirement.  *See Sac and Fox Nation v. Norton,* 585 F.Supp.2d 1293, 1302 (W.D. Okla. 2006) (plaintiff's non-APA based cause of action does not require final agency action); *accord Washington Toxics Coalition v. E.P.A.,* 413 F.3d 1024, 1034 (9th Cir. 2005), *cert. denied,* 546 U.S. 1090 (2006).  This confusion infects the entire MTD, but even so, it is clear that the MTD must be denied, as Plaintiffs have stated claims from which Defendants' sovereign immunity has been waived, for which relief can be granted, and over which this Court has jurisdiction.

**ARGUMENT**

## I.  STANDARDS FOR DISMISSAL

As the basis for their MTD, Defendants cite only to Fed. R. Civ. P. 12(b)(1).  MTD at 2.[2]

Rule 12(b)(1) is the basis for the defense of lack of subject matter jurisdiction.   While

Defendants do not contest Plaintiffs' asserted bases for federal question jurisdiction under 28

U.S.C. §§ 1331 and 1362, they do raise sovereign immunity as an obstacle to the exercise of that

jurisdiction.   Sovereignty immunity  "is a jurisdictional issue and thus may be raised in a Rule

12(b)(1) motion to dismiss . . . ."  *Royer v. Federal Bureau of Prisons,* 933 F.Supp.2d 170, 180

(D.D.C. 2013).

As noted above in the Introduction, many of Defendants' arguments, however, while

cloaked in sovereign immunity terms, are really contentions of "failure to state a claim," which

are properly asserted under Rule 12(b)(6), not 12(b)(1).  *See N.R.D.C. v. U.S. Dep't of State,* 658

F.Supp.2d 105, 107 (D.D.C. 2009) ("Although defendants couch their motion primarily as a

jurisdictional challenge under Rule 12(b)(1), the more appropriate procedural vehicle is

12(b)(6)"). "Whether there is a cause of action is not a jurisdictional question; rather, 'the court

must assume jurisdiction before deciding whether a cause of action exists.'"  *Id.* at 108 (citations

omitted).   "[W]here there is no cause of action under the APA, dismissal is properly invoked

under Rule 12(b)(6), not under Rule 12(b)(1)."  *Id., citing Reliable Automatic Sprinkler Co. v.*

*Consumer Prod Safety Comm'n,* 324 F.3d 726, 731 (D.C. Cir. 2003); *see also Oryszak v.*

---

[2] In contrast, when making virtually identical arguments against tribes six years ago in
cases in federal district courts in Oklahoma, Defendants relied on both Fed. Rs. Civ. P. 12(b)(1)
and 12(b)(6).  *E.g., Otoe-Missouria Tribe v. Kempthorne,* 2008 WL 5205191 (W.D. Okla. Dec.
10, 2008); *Tonkawa Tribe v. Kempthorne,* 2009 WL 742896 (W.D. Okla. Mar. 17, 2009);
*Seminole Nation v. Salazar,* 2009 WL 919435 (E.D. Okla. Mar. 31, 2009), *all abrogated on
other grounds, Gilmore v. Weatherford,* 694 F.3d 1160 (10th Cir. 2012).

*Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (challenged agency action committed to agency discretion by law fails not for lack of jurisdiction but for failure to state a claim).

As in *N.R.D.C. v. U.S. Dep't of State,* this Court should treat the relevant portions of Defendants' MTD "as one for dismissal under Rule 12(b)(6) for failure to state a claim."  658 F.Supp.2d at 108.  By merging issues of jurisdiction and immunity with the merits of Plaintiffs' claims, and by focusing on Plaintiffs' APA claims virtually to the exclusion of Plaintiffs' non-APA claims, Defendants attempt to deflect this Court's analysis from the modest requirements for stating claims at this stage of the litigation.  To survive a motion to dismiss for failure to state a claim, a plaintiff only need allege facts, which must be taken as true, which set forth "a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Ashcroft v. Iqbal,* 556 U.S. at 678, *citing Twombly*, 550 U.S. at 556; s*ee also Daniels v. United States*, 947 F.Supp.2d 11, 17 (D.D.C. 2013), *citing Twombly* ("The plausibility standard is not akin to a 'probability requirement,' but asks for more than a mere possibility that a defendant acted unlawfully"); *accord American Fed'n v. District of Columbia,* 796 F.Supp.2d 136, 139 (D.D.C. 2011), *citing Twombly* (a complaint must "recite facts sufficient to at least 'raise a right to relief above a speculative level'").  As will be shown, Plaintiffs have alleged facts and violations of law by Defendants which do much more than state *Twombly's* requisite "plausibility of a cause of action;" they clearly state causes of action.

## II. PLAINTIFFS STATE VALID AND PROPER CLAIMS OVER WHICH THIS COURT HAS JURISDICTION

It is well-established that when bringing an action against the United States or its officials, a plaintiff must satisfy only three requirements:  there must be 1) subject matter jurisdiction; 2) a waiver of sovereign immunity; and, 3) a cause of action.  *United Am. v. N.B.C.-U.S.A. Hous.,* 400 F.Supp.2d 59, 61 (D.D.C. 2005), *citing Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir. 1999).  In the instant action each of these requirements is met such as to preclude dismissal.

### A.  There is Subject Matter Jurisdiction Under 28 U.S.C. §§ 1331 and 1362

Plaintiffs assert jurisdiction under 28 U.S.C. §§ 1331 and 1362.  SAC at ¶ 25.  These jurisdictional bases are valid and proper because Plaintiffs are federally recognized Indian tribes and their claims in this civil action arise under the Constitution, laws, and treaties of the United States.  Federal district courts have subject matter jurisdiction over such claims for tribal trust accountings and related declaratory and injunctive relief under both Section 1331 and Section 1362.  *Tonkawa Tribe v. Kempthorne*, 2009 WL 742896, at *2 (W.D. Okla. Mar. 17, 2009); *accord Seminole Nation v. Salazar,* 2009 WL 919435, at *1 (E.D. Okla. Mar. 31, 2009).  In any event, in arguing for dismissal, Defendants do not take issue with Plaintiffs' asserted jurisdiction under these sections, except to argue incorrectly that sovereign immunity bars the exercise of such jurisdiction.

### B.  5 U.S.C. § 702, Provides the Requisite Waiver of Sovereign Immunity For All of Plaintiffs' Claims; Those Having Their Basis Outside the APA, As Well As Those Based on the APA Itself

Defendants correctly point out that waivers of sovereign immunity must be "strictly construed."  MTD at 14.  This point is of no help to Defendants, however, since 5 U.S.C. § 702, provides the necessary clear and broad waiver for all of Plaintiffs' claims and relief sought.

### 1.   Waiver As To Non-APA Claims

It is late in the day for Defendants to argue that 5 U.S.C. § 702 contains a waiver only for

claims based on the APA.  Section 702 provides in pertinent part as follows:

> An action in a court of the United States seeking relief other than money damages
> and stating a claim that an agency or officer or employee thereof acted or failed to
> act in an official capacity or under color of legal authority shall not be dismissed
> nor relief therein denied on the ground that it is against the United States or that
> the United States is an indispensable party.

This provision's broad remedial purpose has been held to provide a general waiver of sovereign

immunity in all civil actions seeking relief other than money damages, whether brought under

the APA or not.  *E.g., Trudeau v. Federal Trade Comm'n*, 456 F.3d at 185-86.  "The APA's

waiver of sovereign immunity applies to any suit whether under the APA or not."  *Chamber of*

*Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996).  Every Court of Appeals considering

the issue has concluded likewise.  *See Delano Farms Co. v. California Table Grape Comm'n*,

655 F.3d 1337, 1345-46 (Fed. Cir. 2011), *cert. denied,* 133 S.Ct. 644 (2012) (exhaustive survey

of cases in various appeals courts).

The Court of Appeals in this Circuit has stated aptly:

> The legislative history of this provision [5 U.S.C. § 702 (1976)] could not be
> more lucid. It states that this language was intended "to eliminate the defense of
> sovereign immunity with respect to any action in a court of the United States
> seeking relief other than money damages and based on the assertion of unlawful
> official action by a Federal officer ...."  ***   The application of sovereign
> immunity is so illogical that one cannot predict in what case the injustice is likely
> to occur.  ***   (T)he time (has) now come to eliminate the sovereign immunity
> defense in all equitable actions for specific relief against a Federal agency or
> officer acting in an official capacity.

*Schnapper v. Foley*, 667 F.2d 102, 107-108 (D. C. Cir. 1981), *cert. denied*, 455 U.S. 948 (1982).

Indeed, the Court of Appeals has expressed exasperation at continuing to face the argument

raised by Defendants here.  "We have previously, and repeatedly, rejected the FTC's first

argument, expressly holding that the 'APA's waiver of sovereign immunity applies to any suit whether under the APA or not.'" *Trudeau,* 456 F. 3d at 186 (citation omitted).

Nor, when dealing with non-APA actions, is the waiver in § 702 limited by any of the requirements of the APA such as final agency action as Defendants here argue, MTD at 12-13. "Although we have never directly considered the contention that the 'final agency action' requirement restricts § 702's waiver of sovereign immunity, our holding that the waiver is not limited to APA cases – and hence that it applies regardless of whether the elements of an APA cause of action are satisfied – removes the linchpin of the FTC's argument. *Trudeau*, 456 F.3d at 187; *accord The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) ("[Any] attempt to restrict the waiver of sovereign immunity to actions challenging "agency action" as technically defined in § 551(13) offends the plain meaning of the amendment"); *see also Veterans for Common Sense v. Shinseki,* 644 F.3d 845, 865-67 (9th Cir. 2011), *vacated on other grounds,* 678 F.3d 1013 (9th Cir. 2012) (*en banc*) (Section 704 constrains § 702's waiver only for actions based on the APA).

Significantly, when convenient to its purposes, in defending against breach of trust cases by Indians and Indian tribes, the United States acknowledges § 702's broad waiver of sovereign immunity.  The United States often argues that money damages are unavailable but that equitable relief is available and adequate.  *E.g., United States v. White Mountain Apache Tribe*, 537 U.S. 465, 478-79 (2003) ("Government argues that the inference of a damages remedy is unsound simply because damages are inappropriate as a remedy for failures of maintenance [of condition of property], prospective injunctive relief being the sole relief tailored to the situation"); *accord United States v. Mitchell*, 463 U.S. 206, 227 & n.32 (1983) ("The Government contends that violations of duties imposed by the various statutes may be cured by actions for declaratory,

injunctive or mandamus relief against the Secretary, although it concedes that sovereign immunity might have barred such suits before 1976, * * * [when] Congress enacted a general consent to such suits. See 5 U.S.C. § 702.")

### 2.   Waiver As To APA Claims

Nor is the sovereign immunity defense available to Defendants for Plaintiffs' claims stated under the APA.  When a plaintiff states claims under the APA, the APA "provides a waiver of sovereign immunity at 5 U.S.C. § 702 . . . ."  *Van Allen v. U.S. Dep't of Veterans Affairs,* 925 F.Supp.2d 119, 125 (D.D.C. 2013); *accord American R.R. & Transp. Builders Ass'n v. E.P.A.,* 865 F.Supp.2d 72, 80 (D.D.C. 2012), *aff'd,* 2013 WL 599474 (D.C. Cir. Jan. 28, 2013) ("if the [APA] provides a cause of action, then it also provides a waiver of sovereign immunity").

By its terms, the waiver in the APA for APA-based claims is only defeated where another statute provides an adequate remedy in a court or where money damages are sought.  5 U.S.C. § 702; *see Davis v. United States,* 2014 WL 98635, at *5 (D.D.C. Jan. 10, 2014) (citations omitted).  Defendants' other-statutory-adequate-remedy argument is the Indian Tucker Act, 28 U.S.C. §1505.  MTD at 17.  This argument has been expressly and soundly rejected.

> Section 1505, does not, contrary to Defendants' arguments, impose exclusive jurisdiction in the Court of Federal Claims.  To the contrary, §1505 grants jurisdiction to the Court of Federal Claims to hear claims concurrently with the various district courts.

*Otoe-Missouria Tribe,* 2008 WL 5205191, at *3 (citations omitted); *accord Tonkawa Tribe,* 2009 WL 742896, at *3 ("the court rejects defendants' contention [based on, *inter alia,* the Indian Tucker Act], that the proviso of § 702 applies").  No other statute even remotely addresses the relief sought by Plaintiffs here.  Thus, as in *Otoe-Missouria Tribe* and *Tonkawa Tribe,* the APA waives  sovereign immunity in this action for Plaintiffs' APA-based claims.

### 3.   Waiver for Equitable Monetary Relief

Defendants also assert sovereign immunity from what they view as Plaintiffs' claims for "money damages."  MTD at 17-18.  Plaintiffs, however, do not seek money damages.  They seek trust accountings, which clearly are a form of equitable relief.  SAC at ¶67.  They also seek trust account balance correction and account wholeness, which also are forms of equitable relief.  *Id.* ¶ 69.

*Cobell* establishes that, at least with respect to sovereign immunity waivers under § 702, actions for trust accountings by individual Indian beneficiaries are not the same as actions for, or the equivalent of actions for, money damages. *Cobell v. Babbitt,* 30 F.Supp.2d 24, 40 (D.D.C. 1998) (*Cobell I).*   Accountings and account balance correction are forms of equitable relief because they are restitutionary in nature, not "compensatory or substitutionary." *Cobell I*  at 41; *see also Crocker v. Piedmont Aviation,* 49 F.3d 735, 747 (D.C. Cir. 1995), *cert. denied,* 516 U.S. 865 (1995) ("An action in restitution *can* result in the defendant's payment of money . . . . In such a case the payment of money from defendant to plaintiff represents a kind of specific relief rather than compensatory damages.  Whatever restitution may encompass . . . we clearly may not collapse it into the broader notion of 'compensation'") (citations omitted; emphasis in original).

At least two judges in another federal court have reached the same conclusion with respect to accounting actions by tribes, and in the context of arguments identical to Defendants' here.

> To the extent Defendants argue § 702 does not provide a waiver of sovereign immunity in this case because Plaintiff seeks a monetary award, their argument lacks merit.  First and foremost, Plaintiff seeks an accounting of funds held in trust by Defendants.  If that accounting reveals that the balance Defendants currently believe to be accurate is in actuality understated, the adjustment necessary to correct the balance will not be money damages.  Rather, that amount is more in the nature of reimbursement as it merely restores to Plaintiff that which always belonged to it. *Bowen v. Mass.,* 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

> Our cases have long recognized the distinction between an action at law for
> damages—which are intended to provide a victim with monetary compensation
> for an injury to his person, property, or reputation—and an equitable action for
> specific relief—which may include an order providing for the reinstatement of an
> employee with backpay, or for 'the recovery of specific property *or monies*,
> ejectment from land, or injunction either directing or restraining the defendant
> officer's actions.' *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S.
> 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed.2d 1628 (1949) (emphasis added). The
> fact that a judicial remedy may require one party to pay money to another is not a
> sufficient reason to characterize the relief as 'money damages.'

*Otoe-Missouria Tribe v. Kempthorne,* 2008 WL 5205191, at *4 (emphasis and citations in

original) (Cauthron, J.); *Tonkawa Tribe v. Kempthorne,* 2009 WL 742896, at *3 ("This action

seeks an accounting and is not a suit seeking money damages … within the terms of § 702….")

(Friot, J.).

Plaintiffs' claims here likewise are "for other than money damages." 5 U.S.C. § 702.

Indeed, in using the phrase "money damages" in § 702, Congress intentionally "authorize[d]

equitable suits for specific monetary relief . . . ." *Bowen v. Massachusetts,* 487 U.S. 879, 899-

900 (1988); *accord M.K. v. Tenet,* 99 F.Supp.2d 12, 24 (D.D.C. 2000), *citing Bowen* ("the

exclusion of damages claims from the APA's waiver of sovereign immunity does not exclude

equitable claims for specific monetary relief"). "Specific relief" includes the "restor[ation] to the

plaintiff [of] that to which it was entitled from the beginning." *America's Cmty. Bankers v.*

*F.D.I.C.,* 200 F.3d 822, 829 (D.C. Cir. 2000).

### C. Plaintiffs Have Stated Well-Grounded Causes of Action for Trust Accountings, Trust Account Balance Correction and Wholeness, and Trust Records Preservation Based on Law Outside the APA

Plaintiffs first and foremost seek complete and accurate accountings of their trust

accounts, including trust funds and trust assets. This claim is encompassed in Count I and in

Count II of the Complaint. SAC at ¶s 60, 61, 62, 66, and 67. Also encompassed in Counts I and

10

II are Plaintiffs' claims for corrected "trust fund account balances" and for the accounts to be made "whole as if there had been no breaches of trust, negligence, or wrongdoing by Defendants." *Id.* at ¶ 69.  Finally, in Count II Plaintiffs seek preservation by Defendants of "any and all documents concerning Plaintiffs' trust accounts including funds and assets that are in the custody, possession, or control of Defendants or their agents, contractors, or consultants." *Id.* at ¶ 69.

These claims are not, nor must they be, grounded in the APA.  They are among the many constitutional and statutorily-based claims against federal agencies and officials that proceed independently and regardless of the APA's causes of action.  *See, e.g., Howard R.L. Cook & Tommy Shaw Foundation v. Billington*, 737 F.3d 767, 771 (D.C. Cir. 2013) ("To be sure, this is a Title VII suit, not an APA case"); *Veterans for Common Sense v. Shinseki,* 644 F.3d at 866 ("plaintiff's challenge is constitutional and thus not dependent on the APA for a cause of action"); *Wilderness Soc. v. Kane County,*  632 F.3d 1162, 1171 n.2 (10th Cir. 2011) ("TWS has sued under the Supremacy Clause, not the APA"); *Great Rivers Habitat Alliance v. F.E.M.A.,* 615 F.3d 985, 989 (8th Cir. 2010) ("case was properly litigated under the NFIA, and not the APA").

### 1.  Trust Accountings

Plaintiffs' claims for trust accountings are statutorily based.  At least three separate sections of the 1994 Act have been held unequivocally to provide a right to trust accountings.[3]

---

[3]  Confusingly, Defendants both complain incorrectly, MTD at 2, that Plaintiffs fail to "identify any substantive source of law that compels the 'complete and accurate accounting[] of each of Plaintiffs' trust accounts' they request as a remedy from this Court," *id.* at 8, and properly acknowledge, MTD at 7 & 10, that Plaintiffs in fact rely on statutes including 25 U.S.C. § 4011 and 25 U.S.C. §162.

The first is a Section entitled "Requirement to account."  It provides that "[t]he Secretary shall account for the daily and annual balance of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to section 162a of this title."  25 U.S.C. § 4011(a).  The 1994 Act, along with 25 U.S.C. §162a (which was first enacted in 1938 and which was amended in part by the 1994 Act), are among the leading statutes defining ""'the trust responsibilities of the United States' with respect to tribal funds."  *United States v. Jicarilla Apache Nation,* 131 S.Ct. 2313, 2325 (2011).

The Court of Appeals has held that Section 4011(a) provides "a right to an accounting." *Cobell v. Salazar (Cobell XXII),* 573 F.3d 808, 810 (D.C. Cir. 2009), *cert. dismissed,* 130 S.Ct. 3497 (2010); *accord Fletcher v. United States,* 730 F.3d 1206, 1212 (10th Cir. 2013) (citations omitted) (§ 4011(a) "speak[s] directly to traditional trust duties, including the duty to account"); *Fletcher v. United States,* 2014 WL 356895, at *1-2  (N.D. Okla. Jan. 31. 2014) (§ 4011 imposes accounting obligations and rights).  While the *Cobell* and *Fletcher* plaintiffs are individual Indians, the Section's right extends to tribes as well, as this Court has recognized:

> The 1994 Act codifies certain preexisting duties that the Secretary of the Interior, as a trustee-delegate of the United States, owes to both individual Indian and trust beneficiaries.  Congress mandated in the 1994 Act that the Secretary of the Interior 'account for the daily and annual balances of all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to the Act of June 24, 1938 (25 U.S.C. 162a).  25 U.S.C. § 4011(a).

*Assiniboine and Sioux Tribe v. Norton,* 211 F.Supp.2d 157, 158 (D.D.C. 2002) (citations in original).  Hence, here, as in *Cobell,* "[t]he plaintiffs are entitled to an accounting under the statute. 25 U.S.C. § 4011(a)."  *Cobell XXII,* 573 F.3d at 813 (citation in original).

The second 1994 Act accounting provision is Section 4044.  This Section provides, in relevant part, that the Secretary shall report to Congress that "the Secretary has provided the

account holder with as full and complete an accounting as possible of the account holder's funds to the earliest possible date. . . ." 25 U.S.C. 4044(2)(A). This Section also has been held to require an accounting to tribes. *Otoe-Missouria Tribe v. Kempthorne,* 2008 WL 5205191, at * 2 ("Plaintiff may compel Defendants to perform the discrete activity of accounting for the funds held in trust as required under § 4044"); *accord Tonkawa Tribe v. Kempthorne,* 2009 WL at *4 ("The Amended Complaint states a claim for relief [for a complete, accurate and timely accounting of tribal trust funds] under § 4044 . . . .").

The third statutory accounting provision is the portion of the 1994 Act codified at 25 U.S.C. § 162a(d). That Section, entitled "Trust Responsibilities of the Secretary of the Interior," provides, *inter alia* and in relevant part that

> The Secretary's proper discharge of the trust responsibilities of the United States shall include (but are not limited to the following):
>
> (1) Providing adequate systems for accounting for and reporting trust fund balances; [and]
> (3) Providing periodic, timely reconciliations to assure the accuracy of accounts….

25 U.S.C. § 162a(d).

The Court of Appeals has expressly found Section 162a to be among the statutes that give a "right to an historical trust accounting…." *Cobell v. Salazar,* 679 F.3d 909, 913 (D.C. Cir. 2012), *cert. denied,* 133 S.Ct. 543 (2012), *citing Cobell XXII.* Similarly, this Court has held unequivocally that this Section provides a "statutory duty . . . to provide a full and accurate accounting of the Trust to the Indian beneficiaries…." *Cobell v. Norton,* 377 F.Supp.2d 4, 12 (D.D.C. 2005) (citations omitted); *accord Villegas v. United States,* 2013 WL 3990809, at *8-9 (E.D.Wash. Aug. 5, 2013) ("Plaintiff's accounting for profits claim arises from a breach of statutory duties codified in 25 U.S.C. §161-162, specifically § 162a(d)(1)") (citation omitted).

### 2.  Trust Account Balance Correction and Wholeness

The 1994 Act also provides bases for Plaintiffs' claims for correcting trust account balances and making the accounts whole as if there had been no breaches of trust, negligence, or other wrongdoing. SAC at ¶ 69.  The relevant statutory sections are 25 U.S.C. § 4044 and 25 U.S.C. § 162a(d).  In these Sections, separately and in addition to the requirements to account discussed above, Congress has required the Secretary to <u>reconcile</u> tribal trust accounts.

Section 4044 in relevant part requires the Secretary of the Interior to transmit to Congress "by May 31, 1996, a report identifying for each tribal trust fund account for which the Secretary is responsible a balance reconciled as of September 30, 1995…."  25 U.S.C. § 4044.  Separately and additionally, Section § 162a(d), provides, *inter alia,* that, "[t]he Secretary's proper discharge of the trust responsibilities of the United States shall include (but are not limited to) the following:  (3) Providing periodic, timely reconciliations to assure the accuracy of accounts."  25 U.S.C. § 162a(d)(3).  Subsumed in these reconciliation requirements is the requirement to correct account balances.

Similar to the accounting requirement sections, the 1994 Act reconciliation requirement sections codify previous congressional mandates.  In 1987 Congress expressly prohibited the Secretary from using Interior Department appropriation funds "to transfer funds under a contract with any third party for the management of tribal or individual trust funds until the funds held in trust for such tribe or individual have been audited and reconciled, and the tribe or individual has been provided with an accounting of such funds."  Pub. L. No. 100-202, 101 Stat. 1329 (1987).

The 1987 law was specifically in response to the Bureau of Indian Affairs' (BIA) decision to "'contract out' with a private third party for certain trust services."  H.R. Rep. No. 101-1006, at 208 (1991). As the BIA testified to Congress in 1986, the General Accounting Office (now re-named the Government Accountability Office) (GAO) had reported in 1982 that

Reconciliations were not performed, and as a result, investment decisions were
based on unreliable information.  The auditors could not certify the cash position
of the trust funds because of the millions of dollars in unreconciled differences.

*Indian Trust Fund:  Oversight Hearing before the S. Select Comm. on Indian Affairs*, 99th Cong.,

at 32-33 (1986) (statement of Ross Swimmer, Assistant Secretary for Indian Affairs).[4]  Assistant

Secretary Swimmer also acknowledged that the Interior Department's own Office of the

Inspector General 1983 report "reiterated the findings and recommendations of the previous

GAO report…."  *Id.* at 33.  Extremely concerned with the BIA's outsource decision when the

trust funds admittedly never had been audited or reconciled, Congress prohibited such a contract

until the funds had been audited and reconciled, and accountings had been provided.  H.R. Rep.

No. 101-1006, at 209; H.R. Rep. No. 102-499, at 18 (1992).

The 1987 law – and its seven successive annual counterparts -- were Congress' response

to the historical, pervasive, and well-documented BIA trust accounting and management

problems, including the failure to reconcile accounts and correct their balances.  *See generally*

*Indian Trust Fund Management:  Oversight Hearing before the S. Select Comm. on Indian*

*Affairs,* 102nd Cong., at 112-122 (1992) (statement of Rep. Mike Synar, Chairman, H. Subcomm.

on Environment, Energy, and Natural Resources of the Comm. on Government Operations);

H.R. Rep. No. 102-499, at 18-19 (1992).  "In short, each of [the 1987 and successive] directives

clearly specified that Congress fully intended to direct the Bureau to reconcile and audit all

Indian trust fund accounts prior to any transfer to a third party."  H.R. Rep. No. 102-499, at 19

(1992).

---

[4] The 1982 GAO findings "that trust accounts had not been reconciled … to ensure
correct account balances … were not new."  H.R. Rep. 102-499, at 9 (1992).  "Essentially, the
same findings were embodied in the GAO's 1928, 1952, and 1955 audits of the Indian trust
fund[s]."  *Id.*

While BIA promised that "reconciliations would be performed," *Indian Trust Fund Oversight Hearing before the S. Select Comm. on Indian Affairs*, 99th Cong., at 33 (1986) (statement of Ross Swimmer, Assistant Secretary for Indian Affairs); *Review of the Bureau of Indian Affairs' Management of the $1.7 Billion Indian Trust Fund, Hearing before the H. Subcomm. on Environment, Energy, and Natural Resources of the Comm. on Government Operations,* 101st Cong., at 159 & 460-61 (1989) (testimony and statement of Dr. Eddie Brown, Assistant Secretary for Indian Affairs), as it turned out, the BIA was unable to do so on its own. *See* H.R. Rep. No. 102-499, at 16 (1992) ("the Bureau does not – and cannot – conduct periodic or timely reconciliations … [and] does not – and cannot – provide account holders with accurate …account balances").

BIA first contracted with a private accounting firm, Arthur Andersen & Co (AA) to perform fiscal years 1988 and 1989 financial audits of its aggregate trust fund holdings.  H.R. Rep. No. 102-499, at 12 & 19-20 (1992); H.R. Rep. No. 102-1086, at 230 (1992).  Due to BIA's poor record keeping and weak accounting controls, AA was unable to confirm cash balances for any single individual Indian or tribe's account.  *Id.*  "[F]or a time, the Bureau tried to pass off its arrangement with Arthur Andersen as a full audit and reconciliation as required by law."  H.R. Rep. No. 102-499, at 19-20.  However, AA informed BIA and Congress "that its work was not intended to meet the audit and reconciliation requirements of the congressional directives."  *Id.* at 20.  In 1989 the Office of Management and Budget designated BIA as a "high risk agency" requiring priority attention to persistent failures and deficiencies and issued a corresponding directive.  *Id.*

For the next three years the House Subcommittee on Environment, Energy, and Natural Resources investigated and held oversight hearings on BIA's trust mismanagement.  H.R. Rep.

No. 102-499, at 8 & 13 (1992); H.R. Rep. No. 102-1086, at 128 (1992).  In 1990 the BIA presented its "requested . . . first quarterly update on the status of all efforts connected with the management of the trust funds."  *Continuing Failure to Adequately Manage the Indian Trust Fund, Hearings before the H. Subcomm. on Environment, Energy, and Natural Resources, of the Comm. on Gov't Operations,* 101st Cong., at 120 (1990) (Letter from George Gover, Acting Director, Office of Trust Fund Management, Department of the Interior).  Among the update attachments were drafts prepared by the BIA for Requests for Proposals for reconciliation and auditing services.  *Id.* at 121.  The "Technical Provisions for Reconciliation Services" expressly stated that the BIA was seeking a

> firm to reconcile the source documents with what was posted to the Bureau Tribal Trust accounts for each tribe.  The variances will need to be summarized and accounts reconstructed for presentation of corrected balances to the Bureau and the Tribes.

*Id.* at 169.  As the GAO testified to Congress, the reconciliation and audit services should be separated such that the reconciliation would include reconciling the account balances and the audit and certification would independently certify the reconciled account balances.  *Bureau of Indian Affairs' Management of the $2 Billion Indian Trust Fund, Hearing before the H. Environment, Energy, and Natural Resources Subcomm. of the Comm. on Government Operations,* 102nd Cong., at 11 (1991) (Statement of Jeffrey C. Steinhoff, Director, Civil Audits, Accounting and Financial Management Division, U.S. General Accounting Office).

Ultimately, "as a result of continuing pressure by the subcommittee, on December 28, 1990, the BIA finally issued a request for proposals (RFP) for … a Trust Fund Reconciliation project."  H.R. Rep. No. 102-1086, at 231 (1992); *accord* H.R. Rep. No. 102-499, at 24-25 (1992).  In May 1991, BIA awarded a reconciliation contract to AA.  H.R. Rep. No. 102-499, at 25.

The reconciliation contract was to include "identify[ing], and to the extent practicable, correct[ing] account balances for the tribal and IIM accounts by using source documents to reconstruct trust account transactions so that account holders are provided as accurate an accounting as possible." U.S. Gen. Acct. Off., GAO/T-AIMD-94-99, Testimony before the H. Subcomm. on Interior and Related Agencies of the Comm. on Appropriations, Financial Management:  Status of BIA's Efforts to Reconcile Indian Trust Fund Accounts and Implement Management Improvements, at 3 (1994).

From the beginning, AA's contract "encountered substantial difficulties" in terms of cost (which was underestimated) and scope of work (which was overestimated).  U.S. Gen. Acct. Off., GAO/T-AIMD-94-99, at 25-26.  AA was originally hired for $12 million to reconcile all transactions in all tribal and individual trust accounts from their inception.  U.S. Gen. Acct. Off., GAO/AIMD-96-93, Report to the S. Comm. on Indian Affairs, Financial Management:  BIA's Tribal Trust Fund Account Reconciliations Results, at 2 (1996).  AA ultimately was paid $21 million to review some years of some transactions in some tribal trust accounts.  *Id.*  at 3.  The GAO has summarized AA's work product as follows:  the AA Reports do not reflect reliable, accurate, or complete accountings of tribal trust accounts because, *inter alia,* they were not conducted pursuant to generally accepted accounting principles, but instead were based on procedures defined by the BIA which imposed limitations on the scope of work to be done and made changes in methodologies over the course of the project; they were premised on the erroneous assumption that accountings could be done based on existing information from the BIA, without determining whether that information was accurate historically; and, they were based on accounts for which records and information were non-existent or could not be located. *See generally id.*  This Court has stated that "the results of the [AA] reconciliation project were

mixed and inconclusive." *Cobell v. Kempthorne, (Cobell XX),* 532 F.Supp.2d. 37, 52 (D.D.C. 2008).

What remained intact at least from 1987 to 1994 was the understanding that "reconciliation" included account balance correction, as exemplified by virtually all GAO testimony and virtually every GAO report during the development of the 1994 Act. *E.g.,* U.S. Gen. Acct. Off., GAO/T-AFMD-92-6, Financial Management:  BIA Has Made Limited Progress in Reconciling Indian Trust Funds Accounts and Developing a Strategic Plan; Testimony before the Subcomm. on Interior and Related Agencies, Comm. on Appropriations, at 1(1992); U.S. Gen. Acct. Off., GAO/AFMD-92-38, Financial Management:  BIA Has Made Limited Progress in Reconciling Trust Accounts and Developing a Strategic Plan (1992); *Native American Trust Fund Accounting and Management Reform Act of 1993, Hearing on S. 925 before the S. Comm. on Indian Affairs,* 103rd Cong. at 20 (1993) (Statement of Brian P. Crowley, Director, Planning and Reporting, Accounting and Financial Management Division, U.S. General Accounting Office); U.S. Gen. Acct. Off., GAO/T-AIMD-94-99, Testimony before the H. Subcomm. on Interior and Related Agencies of the Comm. on Appropriations, Financial Management:  Status of BIA's Efforts to Reconcile Indian Trust Fund Accounts and Implement Management Improvements, at 1-2 (1994).  The GAO was adamant that unless and until the accounts are reconciled, BIA cannot "ensure that trust fund account balances are accurate."  U.S. Gen. Acct. Off., GAO/T-AIMD-94-99, Testimony before the H. Subcomm. on Interior and Related Agencies of the Comm. on Appropriations, Financial Management:  Status of BIA's Efforts to Reconcile Indian Trust Fund Accounts and Implement Management Improvements, at 3 (1994); *BIA Management of Indian Trust Funds, Hearing on H.R. 1846 and H.R. 4833 before the H. Subcomm. on Native American Affairs, of the Comm. on Natural Resources,* 103rd Cong., at 56

19

(1994) ((Statement of Brian P. Crowley, Director, Planning and Reporting, Accounting and Financial Management Division, U.S. General Accounting Office); *id.* at 163 (statement of George H. Stalcup, Associate Director, Financial Integrity Issues, Accounting and Information Management Division).

The 1994 Act reconciliation requirements thus plainly support Plaintiffs' claim for account balance correction and wholeness. They reflect Congress' reliance on BIA's own reconciliation contract and GAO's expertise and understanding that "reconciliation" includes account balance correction. *See also* Black's Law Dictionary (9th ed. 2009) ("reconciliation" in the legal accounting and financial context includes account adjustments).

Moreover, there is considerable evidence that, notwithstanding the 1994 Act and the AA contract, tribal account balances remain unreconciled and uncorrected / less than whole. Almost a decade after the 1994 Act and AA contract, the GAO reported that Indian trust fund "account holders [still] have no assurance that their account balances are accurate…." U.S. Gen. Acct. Off., GAO-03-104, Report, Major Management Challenges and Program Risks, Department of the Interior, Performance and Accountability Series, at 15 (2003). As Plaintiffs state in their SAC at ¶ 10, since 1996 and to this day Interior's Office of the Special Trustee for American Indians, the agency to which the 1994 Act delegates management of tribal trust funds, receives qualified financial statement audits because, *inter alia,* independent public accounting firms performing the audits are unable "to satisfy [them]selves as to the fairness of trust fund balances…." KPMG LLP Independent Auditors' Report on Financial Statements (Nov. 13, 2013), *reprinted in* U.S. Dep't of the Interior, Tribal And Other Trust Funds and Individual Indian Monies Trust Funds Managed by the U.S. Department of the Interior Office of the Special Trustee for American Indians (Annual Report 2013).

### 3.  Trust Records Preservation

Plaintiffs' claims for trust records preservation are likewise rooted first and foremost in the 1994 Act.  Several of the *Cobell* opinions of the Court of Appeals and this Court have stated that the 1994 Act's accounting requirements "self-evidently" encompass "the locating and retention of records…."  *E.g., Cobell v. Babbitt (Cobell VI)*, 240 F.3d 1081, 1103 (D.C. Cir. 2001).  "As trustee delegates these [federal] officials ha[ve] a clear obligation to maintain trust records and furnish such records to beneficiaries upon request…."  *Id.* at 1093, *citing Cobell v. Babbitt (Cobell II),* 37 F.Supp.2d 6, 37 (D.D.C. 1999).

This "Court has concluded that the 1994 … Act 'requires [Interior] to retrieve and retain all information concerning the [Indian] trust[s] that is necessary to render an accurate accounting of all money in the … trust.'"  *Cobell v. Norton (Cobell XV),* 229 F.R.D. 5, 8 (D.D.C. 2005), *citing Cobell v. Babbitt (Cobell V),* 91 F.Supp.2d, 1, 58 (D.D.C. 1999).  "[T]he Court has consistently emphasized Interior's duty to preserve trust records against loss, damage, and destruction…."  *Cobell XV* at 8.

These constructions of 25 U.S.C. § 4011 and 25 U.S.C. § 162a are surely correct.  Two of the key 1994 Act congressional reports contain extensive discussions about Congress' concern with BIA's trust records management.  The leading report, *Misplaced Trust:  The Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund,* H.R. Rep. No. 102-499, at 50-56 (1992), reviewed BIA's proposed comprehensive "Strategic Planning Framework," which was intended to solve decades of financial management structural problems.  The report found the Strategic Planning Framework to be deficient in, *inter alia,* fully and properly addressing records maintenance and management problems.  H.R. Rep. No. 102-499, at 54.  The report specifically recommended that, to solve its accountability and financial reporting problems, BIA must "complete a set of policy and procedural manuals … for trust fund management" that address,

21

*inter alia,* "financial records management." *Id.* at 61; see also H.R. Rep. No. 102-1086, at 230 (1992) (AA's fiscal year 1988 and 1989 audits of aggregate BIA trust fund holdings "highlighted major inadequacies in accounting records ….").

These reports were among the support for this Court's conclusion that the 1994 Act's "requirement to render an accurate accounting, and Interior's duty to establish 'consistent written policies and procedures' necessary to further the rendition of an accounting . . . [establish] the duty to retrieve and retain all information regarding the [Indian] trust that is necessary to render an accurate accounting of all ... funds held in trust by the United States." *Cobell V,* 91 F.Supp. at 42. "[A] fundamental requirement of defendants' responsibilities in rendering an accurate accounting is retaining the documents necessary to reach that end, and … Congress has mandated [in the 1994 Act] that Interior establish written policies and procedures required to meet that goal …." *Id.* at 43, *citing* 25 U.S.C. §§ 162a(d)(6), 162a(d)(7), and 25 U.S.C. § 4011 (and calling these sections the codification of the mandate that Interior establish consistent, written policies and procedures for trust fund management and accounting).

## D. Additionally and Alternatively, Plaintiffs Have Stated Proper Causes of Action Under the APA

In addition and alternatively to their non-APA claims, Plaintiffs state claims under the APA. Plaintiffs' APA claims are set forth in Count III of the SAC at ¶s 70-75. Plaintiffs' APA claims include claims for: 1) complete and accurate trust accountings (¶ 73); 2) trust account balance correction and account wholeness (¶ 75); 3) trust records preservation (¶ 74); and 4) other applicable declaratory and equitable relief (¶ 72). These APA claims are brought pursuant to 5 U.S.C. §§ 706(1) and (2).

It is proper and common for plaintiffs to assert claims in the alternative under the APA, *see, e.g., American Chem. Council v. U.S. Dep't of H.H.S.,* 922 F.Supp.2d 56, 58 (D.D.C. 2013), even when the APA claims are based on the same facts giving rise to non-APA claims. *See City of Dover v. U.S. E.P.A.,* 2013 WL 6157926, at *3 (D.D.C. Nov. 15, 2013).   Other Indian tribes seeking trust accountings have successfully alleged their claims under "the APA but also under other federal statutory and common law . . . ." *Tonkawa Tribe v. Kempthorne*, 2009 WL 742896, at *5 (denying motion to dismiss and stating that "no part of plaintiff's [trust accounting] claims should be dismissed as a matter of law"); *accord Seminole Nation v. Salazar,* 2009 WL 919435, at *1 ("the Court finds that it has subject matter jurisdiction over all the [APA and non-APA trust accounting] claims asserted by the Tribe in the amended complaint").

 "As is apparent from the terms of the APA, agency action is presumptively subject to judicial review thereunder."  *Rafeedie v. I N.S.,* 880 F.2d 506, 510 (D.C. Cir. 1989) (citation omitted).   "[T]he rule is that the cause of action for review of such action is available absent some clear and convincing evidence of legislative intention to preclude review." *Id.*  "Generally, in the absence of a specific statutory provision precluding judicial review, the APA provides a generic cause of action to '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action.'" *El Paso Natural Gas v. U.S.,* 774 F.Supp.2d 40, 46 (D.D.C. 2011) (citation omitted).

### 1.  Agency action unlawfully withheld or unreasonably delayed

APA claims under Section 706(1) are to "compel agency action" which has been "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "'Agency action' is defined by the APA as 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'"  *National Ass'n of Home Builders v. Norton,* 415 F.3d 8, 13 n.5 (D.C. Cir. 2005), *citing* 5 U.S.C. § 551(13); *accord Beshir v. Holder,* 853

F.Supp.2d 1, 9 (D.D.C. 2011) ("'Agency action,' for purposes of the APA includes, an agency's 'failure to act'") (citations omitted).

As they did in *Otoe-Missouria Tribe,* Defendants here rely on *Norton v. Southern Utah Wilderness Alliance* (*SUWA*), 542 U.S. 55 (2004), for their argument that Section 706(1) requires agency actions to be "demanded by law" and "discrete," which requirements they assert are lacking here.  MTD at 9-14.   *SUWA* did require that agency action be demanded by law and be discrete.  542 U.S. at 65.  The Court then rejected an APA claim based on alleged deficiencies to comply with broad wilderness area land use plans, declining to become involved in "abstract policy disagreements which courts lack both the expertise and information to resolve" and which presented "the prospect of pervasive oversight by federal courts."  542 U.S. at 66.  Here, by contrast, Plaintiffs are saying simply, "You have been managing our trust accounts, so give us the accounting of what you have done with our money, and make our accounts whole if you have mismanaged it.  We assume you have kept our trust records for such an accounting so maintain the records as we may ask for those as well."

Hence, as did the Court in *Otoe-Missouria Tribe,* this Court should reject Defendants' arguments here.  Plaintiffs' sought-after trust accountings are certainly "discrete" agency actions "demanded" by the 1994 Act.  *Otoe-Missouria Tribe,* 2008 WL 5205191, at *2 ("Plaintiff is entitled to pursue this action under § 706(1), as Plaintiff may compel Defendants to perform the discrete activity of accounting for the funds held in trust as required under § 4044"); *accord Tonkawa Tribe,* 2009 WL 742896, at *4 (holding that tribe has properly alleged a claim under § 706(1) seeking "a discrete agency action that a federal agency is required to take but has not taken, *i.e.,* providing a complete and accurate accounting of funds held in trust for the plaintiff as required by §4044").  As in *Otoe-Missouria Tribe* and *Tonkawa Tribe,* to the extent Plaintiffs

24

here bring their action under § 706(1), *SUWA* "does not foreclose this action, and [Plaintiffs have stated] a claim for relief."  *Otoe-Missouria Tribe,* 2008 WL 5205191, at *2 (citation omitted).

Trust account balance correction / wholeness and trust records preservation are similarly discrete agency actions demanded by the 1994 Act.  In addition to not having been provided with their trust accountings, Plaintiffs have not been provided with their trust account corrections or records.  Those are discrete actions not taken (or unreasonably delayed) and hence actionable under Section 706(1).  *See also Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) ("when administrative inaction has precisely the same impact on the rights of the parties as denial of relief… the court can undertake review as though the agency has denied the requested relief"); *accord Vann v. Kempthorne*, 467 F.Supp.2d 56, 72 (D.D.C. 2006), *rev'd in part on other grounds,* 534 F.3d 741 (D.C. Cir. 2008) ("An agency's 'failure to act,' . . . may itself be a final agency action in certain circumstances.  *See* 5 U.S.C. § 551(13) . . . [and]  [w]here an agency action that is required by law is 'unlawfully withheld or unreasonably delayed,' 5 U.S.C. § 706(1), the agency's failure to act is, in effect, an affirmative act that triggers final agency action review") (citations in original; other citations omitted).

### 2. Agency action that is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law

APA claims under Section 706(2) are based on agency action which is, *inter alia,* "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).   Such claims include claims by an Indian tribe for complete and accurate accountings.  *Otoe-Missouria Tribe,* 2008 WL 5205191, at *3 (failure to provide accountings "establish[es] that Defendants have acted, at a minimum, in a manner not in accordance with law" under §706(2)); *accord Beaty v. F.D.A.,* 853 F.Supp.2d 30, 41 (D.D.C. 2012) (agency action is arbitrary and capricious or an abuse of discretion when it frustrates congressional policy

25

or is contrary to the purposes of an act of Congress – here, the accounting requirements in the 1994 Act).

In addition, for judicial review of APA-based causes of action under Section 706(2), agency actions generally must also be "final." *Ikon Global Mkts. v. Commodity Futures Trading Comm'n,* 859 F.Supp.2d 162, 169 (D.D.C. 2012); *see also* 5 U.S.C. § 704. "[T]he finality inquiry is a 'pragmatic' and 'flexible' one." *National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,* 417 F.3d 1272, 1279 (D.C. Cir. 2005) (citations omitted). "Rather than relying on some formal regulatory definition of final agency action, the court 'look[s] primarily to whether the agency's position is 'definitive' and whether it has a 'direct and immediate effect on the day-to-day business' of the parties challenging the action." *Abigail Alliance for Better Access to Dev'tal Drugs,* 2004 WL 3777340, at *4 (D.D.C. Aug. 30, 2004), *rev'd on other grounds,* 445 F.3d 470 (D.C. Cir. 2006) (citations omitted). Moreover, because "'agency action' encompasses a 'failure to act,' . . . courts in this district have said that if a failure to act amounts to 'consummated agency action' that APA views as final, notwithstanding the fact that the agency 'did nothing,' a party can seek relief under Section 706(2) of the APA". *Ikon Global Mkts,* 859 F.Supp.2d at 169 (citations omitted); *accord In re Center for Auto Safety,* 793 F.2d 1346, 1353 (D.C. Cir. 1986) (agency's undue delay is contrary to law). The agency action or inaction alleged here – failure to provide trust accountings, correct / make whole trust accounts, and preserve trust records -- is final under the APA.

### E.  PLAINTIFFS' CLAIMS ARE TIMELY

Defendants' final argument for dismissal is that Plaintiffs' claims are time barred under "the six year limitations period in 28 U.S.C. § 2401 . . . and should be dismissed for lack of

subject-matter jurisdiction because they are untimely." MTD at 14-15.[5] This argument is unavailing. Plaintiffs assert a "present right . . . under federal law" to trust accountings, trust account balance correction / wholeness, and trust records preservation. *See South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 522 (1986), *citing Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675 (1974). Under applicable law and the facts in this case, no statute of limitations has yet accrued on these claims, let alone barred them.

"The key issue . . . [is] whether plaintiffs' claims have 'accrued' for purposes of 28 U.S.C. § 2401(a)." *Cobell v. Norton,* 260 F.Supp.2d 98, 104 (D.D.C. 2003). "[A]s a matter of law, the statute of limitations begins to accrue on the Plaintiffs' accounting and breach of fiduciary duty claims . . . [only when the trustee] 'repudiates' the trust and the beneficiary has knowledge of that repudiation . . . ." *Pelt v. Utah,* 661 F.Supp.2d 1267, 1283 (D. Utah 2009), *citing Shoshone Indian Tribe v. United States,* 364 F.3d 1339, 1348 (Fed. Cir. 2004). "For example, in *Cobell v. Norton,* an Indian trust accounting case similar to the one here, the court held that the six-year statute of limitations set forth in 28 U.S.C. § 2401 did not begin to accrue until the trust was repudiated or a full and meaningful accounting had been provided to the beneficiaries." *Pelt v. Utah,* 661 F.Supp.2d at 1284 (citation omitted). "[T]his legal principle . . . is . . . the controlling law of this Circuit." *Cobell v. Norton,* 260 F.Supp.2d at 105, *citing Kosty v. Lewis,* 319 F.2d 744 (D.C. Cir. 1963), *cert. denied,* 375 U.S. 964 (1964) (statutes of limitations do not bar equitable claims by beneficiaries against trustee unless and until trustee clearly and continually repudiates the trust).

---

[5] Since "[t]he D.C. Circuit has not resolved whether the statute of limitations in 28 U.S.C. § 2401(a) is jurisdictional," *United States v. Regenerative Sciences,* 878 F.Supp.2d 248, 262 n.12 (D.D.C. 2012), *aff'd,* 2014 WL 393602 (D.C. Cir. Feb. 4, 2014) (citations omitted), it is not clear if this argument is properly brought under Rule 12(b)(1) as opposed to Rule 12(b)(6).

"Having determined what triggers accrual of the statute of limitations, the second part of the analysis requires determining whether, given the facts in the record, the trust has been repudiated." *Pelt v. Utah,* 661 F.Supp.2d at 1285; *accord Cobell I*, 30 F.Supp.2d at 44 (question of whether trust has been repudiated is a "question of fact"). "If so, the question is whether the beneficiary knew or should have known of the repudiation." *Pelt v. Utah,* 661 F.Supp.2d at 1285. "If not, the question is whether an accounting has been completed." *Id.*

"Repudiation of a trust occurs when the trustee expressly terminates the fiduciary relationship or takes actions inconsistent with the terms of the trust (for example, by claiming or taking the corpus of the trust as its own and denying any obligation to the beneficiary)." *Pelt v. Utah,* 661 F.Supp.2d at 1285 (citations omitted). "But even given acts constituting repudiation, no accrual occurs unless the beneficiary knows, or should have known, of the trustee's repudiation of the trust." *Id.* The court in *Pelt* went on to find that the facts in that case did not establish repudiation. These facts included the failure to provide an accounting and continual collection of money under the trust, placing the money in trust accounts, and investing the money purportedly for the benefit of the beneficiaries. *Id.*[6]

This Court in *Cobell* reached a similar conclusion. "Based on the evidence presented in defendants' [summary judgment] motion, including the statements of material fact alleged by defendants to be undisputed, the Court finds that defendants have neither repudiated the existence of the IIM trust nor repudiated plaintiffs' right to enjoy the benefits of the trust." *Cobell v. Norton,* 260 F.Supp.2d at 108. These facts included "failing to provide the IIM

---

[6] Because the court in *Pelt* found no repudiation of the trust, it did not reach the question of notice. 611 F. Supp.2d at 1285.

beneficiaries with the [accounting] information that the beneficiaries were entitled to by law, while simultaneously insisting that they were fully complying with their fiduciary obligations to the beneficiaries." *Id.*

In moving to dismiss the instant action, Defendants do not even allege that the trust has been repudiated. Even assuming *arguendo* that they were to so argue, the facts here are virtually identical to those in *Pelt* and *Cobell* where repudiation was not found. Defendants do not dispute that they continue to maintain Plaintiffs' trust accounts and to manage them purportedly for Plaintiffs' benefit. Most significantly, here, as in *Pelt,* "there is no dispute that the accounting is not yet complete." 661 F.Supp.2d at 1285. Seven years ago, Defendants admitted to this Court, in the context of multiple cases such as this one by tribes for trust accountings, that they had not completed such accountings. *See Assiniboine & Sioux Tribes, et al. v. Norton,* 527 F.Supp.2d 130, 134 (D.D.C. 2007). Based on that admission, in the *Assiniboine & Sioux Tribes'* case and the cases of 37 other tribes, Defendants sought to have this Court remand the tribes' claims to the Interior Department "to prepare a historical accounting *plan* for all tribes (including those that have not brought suit)." 527 F.Supp.2d at 135 (emphasis in original), *citing* Defendants' Reply in Support of its Motion for Remand. The situation today remains the same – no complete and accurate accountings have been provided to Plaintiffs, which underscores why Plaintiffs have and assert a present right to such accountings.[7]

Finally, Defendants' argument that Congress somehow set December 31, 2000 as "the date of accrual" for Plaintiffs' claims is a specious one that should be rejected. MTD at 15, *citing* Pub. L. No. 107-153, 116 Stat. 79 (2002), *as amended by* Pub. L. No. 109-158, 119 Stat.

---

[7] As Plaintiffs allege, SAC at ¶ 55, and as Defendants acknowledge, MTD at 15-16, Congress continues to be aware that tribes have not been provided complete and accurate trust accountings from which they "can determine whether there has been a loss." *E.g.,* Pub. L. No. 113-76, 128 Stat. 5 (2014) (Consolidated Appropriations Act, 2014).

2954 (2005) (also known as the "Settlement of Tribal Claims Acts"). By their terms, the Settlement of Tribal Claims Acts were "solely intended to provide recipients of reconciliation reports with the opportunity to postpone the filing of claims, or to facilitate the voluntary dismissal of claims, to encourage settlement negotiations with the United States." Pub. L. No. 107-153, § 1(b), 116 Stat. 79 (2002).[8]   The Acts contain no language extinguishing established rights or legal principles of limitations statutes accrual.

The Acts' legislative history confirms their precautionary and preventative purposes, *i.e.,* that Congress was acting to prevent potential future harms or perceived risks.  *See American Lung Ass'n v. E.P.A.,* 134 F.3d 388, 389 (D.C. Cir. 1998).  "The purpose of S. 1857, as amended, is to address *the possibility* that the statute of limitations is running or has run on legal claims that Indian tribal governments may assert against the United States related to the management of tribal funds that are held in trust by the United States, as a result of reconciliation reports provided to the tribes by the Department of the Interior in response to §304 of the American Indian Trust Fund Management Reform Act of 1994 . . . ."  S. Rep. No. 107-138, at 1 (2002) (emphasis added); *accord* S. Rep. No. 109-201, at 1 (2005) (verbatim statement of purpose with respect to S. 1892, which became Pub. L. No. 109-158).  Where, as here, no statute of limitations is running, the Acts have no relevance as the legislative history makes clear.

The Senate Reports also state "it is not at all clear that the reconciliation reports at issue did in fact provide tribes with notice sufficient to commence the running of the statute of limitations . . . ."  S. Rep. No. 107-138 at 3 (2002); *accord*  S. Rep. No. 109-201, at 2 ("it is not at all clear that the reconciliation reports at issue did in fact constitute an 'accounting' sufficient

---

[8] Congress rejected the Interior Department's recommendation that this Purpose Section be deleted.  *See* S. Rep. No. 107-138, at 6 (2002).  The Senate Committee on Indian Affairs explained that the Section's inclusion "memorializes [the Act's] limited purpose within the language of the provision itself."  *Id.* at  5.

to commence the running of the statute of limitations . . . .").  The Acts are "solely intend[ed] to prevent the assertion that certain reconciliation reports received by Indian tribes commenced the running of a statute of limitations prior to December 31, 2005."  S. Rep. No. 109-201, at 3 (2005). "The intent of [the Acts] was to eliminate contentions that the tribes received notice of potential claims against the United States . . . for purposes of the statutes of limitations." 151 Cong. Rec. S11567 (daily ed. Oct. 19, 2005) (statement of Sen. McCain).   The Acts are clearly precautionary, preventative, and intend to preserve tribal rights and claims, not extinguish them.

To construe them otherwise would amount to a "repeal by implication" of well-established claims accrual law.  Given such law, "it is usually reasonable to suppose that the legislative intent to change such a rule would be unambiguously expressed." *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 164 (1976) (Stevens, J., dissenting). "As the Supreme Court has frequently observed, 'repeals by implication are not favored' . . . [and] 'will not be found . . . [absent] *clear and manifest* [intent]'" *Hunter v. F.E.R.C.,* 711 F.3d 155, 159 (D.C. Cir. 2013) (emphasis in original; citations omitted).  This is especially true in instances such as here where the implied repeal would affect court jurisdiction, *Blair-Bey v. Quick,* 151 F.3d 1036, 1046 (D.C. Cir. 1998); *accord Palmore v. Superior Court,* 515 F.2d 1294, 1308 (D.C. Cir. 1975), *judgment vacated and remanded on other grounds,* 429 U.S. 915 (1976); judicial review, *Alexander v. Comm'r of Internal Rev.,* 825 F.2d 499, 501 (D.C. Cir. 1987); judicial relief, *United States v. Bethlehem Steel Corp.,* 315 U.S. 289, 334 (1942) (Frankfurter, J., dissenting); or judicial remedial powers including "the courts . . . traditional equitable powers." *Alexander v. Comm'r of Internal Rev.,* 825 F.2d at 501 (citations omitted).

Moreover, a repeal by implication of statutes setting forth rights of tribes such as their rights in the 1994 Act to trust accountings, account balance correction, and records preservation

is especially inappropriate when Congress has made clear its intent to benefit Indians as it did in the Settlement of Tribal Claims Acts.  The rule in such instances is "that 'statutes passed for the benefit of . . . Indian tribes . . . are to be liberally construed, doubtful expressions being resolved in favor of the Indians.'" *Bryan v. Itasca County,* 426 U.S. 373, 392 (1976).  Defendants' argument that, in enacting legislation to protect tribes from the "possible" running of a statute of limitations, Congress impliedly repealed the existing favorable law protecting beneficiaries from the running of limitations statutes falls of its own weight.

Defendants' accrual-date-setting argument is also refuted by instances where Congress has actually done just that and in the context of Indian claims.  For example, Congress has addressed "the question of the appropriate statute of limitations for certain claims brought by the United States on behalf of Indians." *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 240 (1985).  28 U.S.C. § 2415 provided "that claims that accrued prior to [the date of] its original enactment, July 16, 1966, were deemed to have accrued on that date." *Id.*  "This means that any claim prior to July 18, 1966 shall accrue on that date."  *United States v. Rice,* 886 F.2d 334, 1989 WL 112460, at *8  (9th Cir. 1989); *accord Covelo Indian Community v. Watt,* 551 F.Supp. 366, 369 (D.D.C. 1982) ("Subsection g of § 2415 specifically provides that any claims which arose prior to 1966 were deemed to have accrued on the date of enactment of the new statute of limitations, i.e., July 18, 1966").  In contrast, the Settlement of Tribal Claims Acts contain no such specific accrual date provisions.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss should be denied.  Pursuant

to LCvR 7(c), a Proposed Order denying the Motion is submitted herewith.

Respectfully submitted, this 14th day of February, 2014,

                           */s/ Melody L. McCoy*
                           MELODY L. MCCOY
                           U.S. Dist. Ct. No. CO 0043
                           JOHN E. ECHOHAWK
                           Native American Rights Fund
                           1506 Broadway
                           Boulder, CO 80302
                           Tel:  (303) 447-8760
                           Fax:  (303) 443-7776

                           *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to LCvR 5.4(d), I certify that, on February 14, 2014, I electronically filed the foregoing PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS and [PROPOSED] ORDER pursuant to LCvR 5.4(c)(1), which operates to effect service of the documents on all counsel in this case who have obtained CM/ECF passwords.

*/s/ Melody L. McCoy*
MELODY L. MCCOY
US District Court (DC) Bar No CO 0043
*Attorney for Plaintiffs*